MADIE M. HENSELL, Plaintiff-Appellant v. ROBERT B. WINSLOW, M.D. AND CAROLINA PLASTIC SURGERY SPECIALISTS, P.A., Defendants-Appellees

No. 9110SC465

(Filed 19 May 1992)

1. **Physicians, Surgeons, and Allied Professions § 13 (NCI3d) — foreign object left in body — x-ray by chiropractor — time of discovery — statute of limitations**

    Plaintiff "discovered" the presence of a foreign object (drain) left in her body during plastic surgery within the meaning of N.C.G.S. § 1-15(c) when she was informed by her chiropractor on 21 March 1989 that an x-ray revealed an unusual object in her abdomen which might be a drain left from her plastic surgery, that the drain should be removed to prevent serious injury or death, and that she should contact her plastic surgeon. The statute does not require that a plaintiff be informed beyond a reasonable doubt by an expert in the field that a foreign object exists in his or her body to constitute "discovery." Therefore, plaintiff's action commenced against the plastic surgeon on 21 May 1990 was barred by the one-year statute of limitations of N.C.G.S. § 1-15(c) for malpractice actions relating to foreign objects left inside the body.

    **Am Jur 2d, Physicians, Surgeons and Other Healers §§ 258, 321, 323.**

    **Liability of physician, surgeon, anesthetist, or dentist for injury resulting from foreign object left in patient. 10 ALR3d 9.**

2. **Physicians, Surgeons, and Allied Professions § 13 (NCI3d) — malpractice — statute of limitations — letters from surgeon — not continued course of treatment**

    A plastic surgeon's letters to a patient upon whom he had performed surgery pertaining to the need to remove a surgical drain left in the patient's body during the surgery did not constitute a continued course of treatment for statute of limitations purposes where the letters were written five years after the last physician-patient contact in response to a chiropractor's suggestion that an x-ray may have revealed that a surgical drain was left in the patient's body.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 318, 320.**

**When statute of limitations commences to run against malpractice action based on leaving foreign substance in patient's body. 70 ALR3d 7.**

**3. Estoppel § 13 (NCI4th) — letters from surgeon — no equitable estoppel to assert statute of limitations**

Defendant plastic surgeon was not equitably estopped to rely on the statute of limitations as a defense to plaintiff's malpractice action by his letters to plaintiff indicating that there was no urgency about removing a surgical drain left in plaintiff's body during plastic surgery where defendant's letters encouraged plaintiff to make an appointment and come in for an examination right away, there was no false representation or concealment by defendant, and plaintiff put off being examined by defendant for nearly a year.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 322, 323.**

**Fraud, misrepresentation, or deception as estopping reliance on statute of limitations. 43 ALR3d 429.**

APPEAL by plaintiff from judgment entered 18 January 1991 by *Judge Henry V. Barnette* in WAKE County Superior Court. Heard in the Court of Appeals 11 March 1992.

*McNamara, Pipkin, Knott & Crawley, by Jack B. Crawley, Jr., for plaintiff-appellant.*

*Yates, McLamb & Weyher, by Patti L. Holt and Dan J. McLamb, for defendants-appellees.*

LEWIS, Judge.

Several issues are presented. First, does plaintiff "discover" under N.C.G.S. § 1-15(c), the presence of a foreign object left in her body when her chiropractor interprets an x-ray's reflection of an abnormality to be a foreign object? Second, does a physician's letter to a patient upon whom he has performed surgery, indicating the need for the removal of a foreign object, qualify as a "continuing relationship" under the continuing treatment doctrine when the letter is written five years after the last physician-patient contact

and which letter was prompted by a chiropractor's suggestion of an abnormality in the surgical area? Third, does a physician's professional opinion as to a medical condition, if relied upon by a patient as legal advice regarding the statute of limitations for a malpractice suit, estop the physician from pleading the statute of limitations as an affirmative defense to a malpractice action relating to this medical condition?

Defendant Dr. Winslow, a plastic surgeon, performed bilateral reduction mammoplasty and abdominoplasty upon plaintiff on 17 April 1984. This surgery removed adipose tissue from plaintiff's abdomen and both breasts. On 21 March 1989, plaintiff's chiropractor informed her that an x-ray revealed an unusual object in her abdomen. Upon learning of plaintiff's plastic surgery, the chiropractor deduced that the object could be a drain which would need to be removed to prevent the possibility of serious injury or death and so informed the plaintiff. The chiropractor notified Dr. Winslow of the x-ray findings. Dr. Winslow sent plaintiff two letters. The first, dated 3 April 1989, requested that plaintiff make an appointment so that Dr. Winslow could check the abnormality. The second, dated 22 May 1989, advised plaintiff that the x-ray revealed that a piece of drain had been left in one breast. This letter further indicated that there was "no urgency about removing the drain, but it is my obligation to you to correct the situation and I want to do that before a problem arises." On 30 March 1990, Dr. Winslow removed the drain.

Plaintiff commenced this action on 21 May 1990 to recover damages for malpractice in leaving a surgical drain in her body. Defendants answered that plaintiff's action was barred by the statute of limitations in N.C.G.S. § 1-15(c) (1983). The trial court agreed and granted partial summary judgment in favor of defendants on plaintiff's malpractice claims relating to the drain left in her body. Plaintiff took a voluntary dismissal on her remaining claim of malpractice arising out of the 30 March 1990 surgery to remove the drain. Plaintiff appeals the grant of partial summary judgment.

Plaintiff claims that the trial court erred in granting summary judgment for several reasons. First, she disputes the date upon which the applicable statute of limitations began to run. Second, she alleges that an exception to the statute of limitations, the doctrine of continued treatment, applies so that her action is not barred. Third, plaintiff asserts that defendants are equitably estopped

from pursuing the affirmative defense of statute of limitations. We disagree. For the reasons set out below, we affirm the grant of summary judgment in favor of defendants.

[1] All parties agree that the applicable statute of limitation is contained within N.C.G.S. § 1-15(c) (1983). This statute provides:

> Provided further, that where damages are sought by reason of a foreign object, which has no therapeutic or diagnostic purpose or effect, having been left in the body, a person seeking damages for malpractice may commence an action therefor within *one year after discovery* thereof as hereinabove provided, but in no event may the action be commenced more than 10 years from the last act of the defendant giving rise to the cause of action.

N.C.G.S. § 1-15(c) (1983) (emphasis added). Plaintiff seeks damages for Dr. Winslow's failure to remove a nontherapeutic nondiagnostic foreign object (drain) from her body at the close of surgery. Plaintiff's suit is barred by the four year outer limits provision of G.S. 1-15(c) so that in order to proceed, she must have filed suit within the one year post-discovery period provided for malpractice actions relating to foreign objects left inside the body. N.C.G.S. § 1-15(c) (1983). The statute provides that the one year begins to run when plaintiff *discovers* that a foreign object has been left in his or her body. Our Supreme Court extended the discovery time when it held that "the one-year-from-discovery provision in G.S. 1-15(c) can and should be interpreted to include an awareness by plaintiff that wrongful conduct was involved." *Black v. Littlejohn*, 312 N.C. 626, 645, 325 S.E.2d 469, 482 (1985).

On 21 March 1989, plaintiff was shown an x-ray of her abdomen which revealed the presence of a foreign object and was informed by her chiropractor that the foreign object looked like a drain left over from her prior plastic surgery. The chiropractor made plaintiff aware of the potential for severe illness or death if the drain remained, and he advised plaintiff to contact the plastic surgeon to have the drain removed. During this 21 March 1989 visit to her chiropractor, plaintiff was made aware, not only that a foreign object was present in her body, but that it was due to wrongful conduct. Hence, the *Black v. Littlejohn* test is met. Plaintiff had one year from 21 March 1989 to file suit against defendants for malpractice involving the foreign body. As she did not file within this time, her claim is barred by the statute of limitations. Therefore,

HENSELL v. WINSLOW

[106 N.C. App. 285 (1992)]

the trial court properly granted summary judgment on this basis.

Plaintiff claims that because she was informed of the foreign body's presence by a chiropractor, not a medical doctor, that she did not "discover" the presence of the foreign body until Dr. Winslow's 22 May 1989 letter which specifically identified the foreign object as a drain. The legislature has defined chiropractic as "the science of adjusting the cause of disease by realigning the spine, releasing pressure on nerves radiating from the spine to all parts of the body, and allowing the nerves to carry their full quota of health current (nerve energy) from the brain to all parts of the body." N.C.G.S. § 90-143(a) (1990). Because the scope of this definition appears limited to neurological pursuits, plaintiff argues that the chiropractor was not qualified to make her aware of the presence of the foreign body. We disagree.

The statute, N.C.G.S. § 1-15(c), clearly provides that malpractice suits regarding foreign bodies must be filed within "one year after *discovery*." "Usually, words of a statute will be given their natural, approved, and recognized meaning. . . . To determine the intended meaning of the language, courts may resort to dictionaries to determine definitions of words within statutes." *Black*, 312 N.C. at 638, 325 S.E.2d at 478 (citations omitted). Discovery is defined as "[t]o get first sight or knowledge of; to get knowledge of what has existed but has not theretofore been known to the discoverer." Black's Law Dictionary 418 (5th ed. 1979) (citation omitted). The x-ray gave plaintiff "first sight" and the chiropractor's professional advice gave plaintiff "knowledge" that a foreign object, probably a drain, was lodged in her body and must be removed. The statute does not qualify "discovery" by requiring that a plaintiff be informed by an expert in the field, beyond a reasonable doubt, that a foreign object exists in his or her body. Hence, plaintiff had one year from 21 March 1989 to file suit against defendants as this was the day on which she "discovered" the foreign body.

[2] In the alternative, plaintiff asserts the continued treatment doctrine which alters the date upon which the statute of limitations begins to run. Plaintiff claims that Dr. Winslow's letters concerning drain removal constitute "continued treatment" such that the statute of limitations did not begin to run until the last letter dated 22 May 1989.

HENSELL v. WINSLOW

[106 N.C. App. 285 (1992)]

> The continued course of treatment rule, . . ., applies to situa-
> tions in which the doctor continues a particular course of treat-
> ment over a period of time. The theory is that "so long as
> the relationship of surgeon and patient continued, the surgeon
> was guilty of malpractice during that entire relationship for
> not repairing the damage he had done and, therefore, the cause
> of action against him arose at the conclusion of his contractual
> relationship."

*Ballenger v. Crowell*, 38 N.C. App. 50, 58, 247 S.E.2d 287, 293
(1978). "To take advantage of the 'continuing course of treatment'
doctrine, plaintiff must 'show the existence of a *continuing* relation-
ship with his physician, and . . . that he received *subsequent* treat-
ment from that physician.' " *Stallings v. Gunter*, 99 N.C. App. 710,
715, 394 S.E.2d 212, 216, *disc. rev. denied*, 327 N.C. 638, 399 S.E.2d
125 (1990) (citation omitted) (emphases original). This subsequent
treatment must be for the "same injury." *Id.* (citing *Callahan v.
Rogers*, 89 N.C. App. 250, 255, 365 S.E.2d 717, 720 (1988) ). Under
this doctrine, the cause of action accrues at "the earlier of (1)
the termination of defendant's treatment of the plaintiff or (2) the
time at which the plaintiff knew or should have known of his in-
jury." *Ballenger*, 38 N.C. App. at 60, 247 S.E.2d at 294.

In the case at bar, defendant, Dr. Winslow, performed elective
surgery upon plaintiff to remove unwanted adipose (fatty) tissue
on 17 April 1984. The record does not reflect any post-operative
check-ups or other contact between plaintiff or defendant. The lack
of any follow-up visits, initiated by either party, revealed that
the doctor-patient relationship ended upon completion of the plastic
surgery. Dr. Winslow's letters were in response to the chiroprac-
tor's suggestion of a problem; they were not in regard to any
continued treatment related to the 1984 plastic surgery. Hence,
the defendant's treatment of plaintiff ended on 17 April 1984.

[3]  Lastly, plaintiff asks this Court to invoke the doctrine of
equitable estoppel to prevent defendants from relying on the statute
of limitations.

> The essential elements of estoppel are (1) conduct on the part
> of the party sought to be estopped which amounts to a false
> representation or concealment of material facts; (2) the inten-
> tion that such conduct will be acted on by the other party;
> and (3) knowledge, actual or constructive, of the real facts.
> The party asserting the defense must have (1) a lack of

knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.

*Parker v. Thompson-Arthur Paving Co.*, 100 N.C. App. 367, 370, 396 S.E.2d 626, 628-29 (1990). Fraud, intentional or unintentional, and bad faith are not required to invoke equitable estoppel. *Id.* at 371, 396 S.E.2d at 629. "It is the subsequent inconsistent position, and not the original conduct that operates to the injury of the other party." *Id.* (citation omitted).

Plaintiff alleges that Dr. Winslow's letters, which indicated that there was no hurry in removing the drain, lulled plaintiff into believing that she could wait until after the drain removal surgery to file suit against defendants. We disagree. There was no false representation or concealment. Dr. Winslow tried to get plaintiff to make an appointment and come in for an examination as evidenced by letters dated 3 April 1989 and 22 May 1989. According to the April letter, defendants "tried to call [plaintiff] at home and work, but have been unable to reach [plaintiff], therefore we are writing this letter to let you know that we do need to see you and would you please call for an appointment right away. We'll work you in anytime. . . ." Further, in the May letter, Dr. Winslow writes, "[p]lease allow me to see you, examine you, and evaluate this problem. I think that it is important for you." Plaintiff put off the visit until 30 March 1990 for reasons not in the record. Plaintiff is unable to prove elements of equitable estoppel delineated in *Parker*, and therefore, this claim was properly denied.

"Summary judgment may be granted when the movant establishes a complete defense." *Schneider v. Brunk*, 72 N.C. App. 560, 564, 324 S.E.2d 922, 925 (1985) (citation omitted). Defendants asserted the statute of limitations as an affirmative defense. For the reasons stated above, we find that the one year statute of limitations contained in N.C.G.S. § 1-15(c) bars plaintiff's action. Therefore, the trial court properly granted summary judgment in favor of defendants.

Affirmed.

Judges ARNOLD and WYNN concur.