DORIS R. HORTON v. CAROLINA MEDICORP, INC., FORSYTH COUNTY HOSPITAL
AUTHORITY, INC., AND FORSYTH MEMORIAL HOSPITAL

No. 383PA95

(Filed 31 July 1996)

1. **Hospitals and Medical Facilities or Institutions § 62 (NCI4th)— medical malpractice claim against hospital — continuing course of treatment doctrine**

The continuing course of treatment doctrine is the law of North Carolina and tolls the running of the statute of limitations for the period between the original negligent act and the ensuing discovery and correction of its consequences; the claim still accrues at the time of the original negligent act or omission. To benefit from this doctrine, a plaintiff must show both a continuous relationship with a physician and subsequent treatment from that physician. The subsequent treatment must consist of an affirmative act or an omission related to the original act, omission, or failure which gave rise to the claim.

**Am Jur 2d, Hospitals and Asylums §§ 14 et seq.; Physicians, Surgeons, and Other Healers § 320.**

**When statute of limitations commences to run against malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 368.**

**When statute of limitations begins to run in dental malpractice suits. 3 ALR4th 318.**

**Medical malpractice: when limitations period begins to run on claim for optometrist's malpractice. 70 ALR4th 600.**

2. **Hospitals and Medical Facilities or Institutions § 62 (NCI4th)—continuing course of treatment doctrine—applicability to institutional defendants**

The continuing course of treatment doctrine applies to institutional defendants; the General Assembly, for definitional purposes, has treated hospitals and other specified institutional health care providers identically with other health care professionals. Neither legislative policy nor North Carolina case law provides a rationale for differential treatment of hospitals in applying the continuing course of treatment doctrine.

HORTON v. CAROLINA MEDICORP, INC.

[344 N.C. 133 (1996)]

Am Jur 2d, Hospitals and Asylums §§ 14 et seq.; Physicians, Surgeons, and Other Healers § 320.

When statute of limitations commences to run against malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 368.

When statute of limitations begins to run in dental malpractice suits. 3 ALR4th 318.

Medical malpractice: when limitations period begins to run on claim for optometrist's malpractice. 70 ALR4th 600.

3. Limitations, Repose, and Laches § 24 (NCI4th)— medical malpractice—continuing course of treatment—action not timely

The trial court properly granted defendant's Rule 12(b)(6) motion to dismiss where plaintiff was admitted to defendant-hospital for a hysterectomy on 15 November 1990, a catheter inserted during surgery was removed on 16 November 1990, complications developed and plaintiff underwent corrective surgery on 20 November 1990, plaintiff was in the intensive care unit before her discharge from defendant-hospital on 6 December 1990, and this action was filed on 6 December 1993. Plaintiff alleged negligence causing injury in the course of her treatment on 15-16 November 1990, a continuing relationship with defendant, and subsequent treatment relating to her injury caused by the original negligence, thus invoking the continuing course of treatment doctrine so as to toll the running of the statute of limitations. However, while plaintiff alleges complications associated with her recovery from the second procedures, she does not allege that defendant hospital should or could have taken further action to remedy the damage occasioned by its original negligence. The continuing course of treatment doctrine thus operates to toll the statute of limitations only from the time of the original negligence until the performance of the corrective surgery on 20 November. The last act of defendant thus occurred on 20 November 1990 and plaintiff's complaint, filed on 6 December 1993, was untimely.

Am Jur 2d, Physicians, Surgeons, and Other Healers § 320.

**HORTON v. CAROLINA MEDICORP, INC.**

[344 N.C. 133 (1996)]

**When statute of limitations commences to run against malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 368.**

Justice FYRE concurring in part and dissenting in part.

Chief Justice MITCHELL and Justice LAKE join in this concurring and dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 119 N.C. App. 777, 460 S.E.2d 567 (1995), reversing an order allowing defendants' motion to dismiss entered by Beaty, J., on 27 June 1994 in Superior Court, Forsyth County. Heard in the Supreme Court 11 March 1996.

*Warren Sparrow, and Cranwell & Moore, by C. Richard Cranwell, for plaintiff-appellee.*

*Wilson & Iseman, L.L.P., by G. Gray Wilson and Tamura D. Coffey, for defendant-appellants.*

WHICHARD, Justice.

On 6 December 1993 plaintiff Doris Horton filed a complaint against defendants Carolina Medicorp, Inc.; Forsyth County Hospital Authority, Inc.; and Forsyth Memorial Hospital (collectively, "defendant Hospital") seeking damages based on the alleged negligence of defendant Hospital's nursing staff. On 3 May 1994, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, defendant Hospital moved to dismiss the complaint, arguing that plaintiff's action was barred by the statute of limitations set forth in N.C.G.S. § 1-15(c). On 27 June 1994 the trial court entered an order dismissing plaintiff's complaint, ruling that the action was time-barred. Plaintiff appealed, and the Court of Appeals reversed. *Horton v. Carolina Medicorp, Inc.*, 119 N.C. App. 777, 460 S.E.2d 567 (1995). We now reverse the Court of Appeals and order the dismissal reinstated.

The complaint alleges that on 15 November 1990 plaintiff was admitted to defendant Hospital for a total abdominal hysterectomy. On 16 November 1990 a catheter inserted during the surgery was removed. After the removal plaintiff experienced difficulty urinating, and her bladder became distended. She was unable to void her bladder for a twenty-four-hour period, resulting in the tearing of the bladder wall and leakage of urine into the body. Hospital staff discovered this condition on 17 November 1990 and inserted a new catheter.

HORTON v. CAROLINA MEDICORP, INC.

[344 N.C. 133 (1996)]

Plaintiff's condition did not improve, and on 20 November 1990 she underwent corrective surgery. After this second surgery plaintiff was in the intensive care unit before her discharge from defendant Hospital on 6 December 1990.

The question is whether plaintiff's action is barred by the statute of limitations. A statute of limitations defense may properly be asserted in a Rule 12(b)(6) motion to dismiss if it appears on the face of the complaint that such a statute bars the claim. *Hargett v. Holland*, 337 N.C. 651, 653, 447 S.E.2d 784, 786 (1994). Once a defendant raises a statute of limitations defense, the burden of showing that the action was instituted within the prescribed period is on the plaintiff. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). A plaintiff sustains this burden by showing that the relevant statute of limitations has not expired. *See Little v. Rose*, 285 N.C. 724, 727, 208 S.E.2d 666, 668 (1974).

The applicable statute is N.C.G.S. § 1-15(c), which provides that a claim for malpractice arising out of the performance of or failure to perform professional medical services accrues upon the occurrence of the last act of the defendant giving rise to the claim. Plaintiff has three years from that date within which to bring suit. N.C.G.S. § 1-15(c) (1983).

Applying this statute to the facts alleged, if the last act giving rise to the claim was the initial surgery on 15 November 1990 or the removal of the catheter on 16 November 1990, plaintiff's claim filed on 6 December 1993 cannot withstand defendant Hospital's plea of the statute of limitations. Plaintiff does not contend otherwise. Her argument is, rather, that the continuing course of treatment doctrine applies so as to render her discharge from defendant Hospital on 6 December 1990 the last act giving rise to the claim. The issue thus becomes whether this doctrine applies, and if so, which of two dates thereby becomes the occasion of the last act giving rise to the claim: 20 November 1990, the date of the corrective surgery; or 6 December 1990, the date of plaintiff's discharge from defendant Hospital.

[1] This Court has not heretofore decided the applicability of the continuing course of treatment doctrine in this jurisdiction. Our Court of Appeals, however, initially applied the doctrine to a physician malpractice claim in *Ballenger v. Crowell*, 38 N.C. App. 50, 247 S.E.2d 287 (1978), and has applied it in subsequent cases, *see Sidney v. Allen*, 114 N.C. App. 138, 441 S.E.2d 561 (1994); *Hensell v. Winslow*, 106 N.C. App. 285, 416 S.E.2d 426, *disc. rev. denied*, 332 N.C. 344, 421

**HORTON v. CAROLINA MEDICORP, INC.**

[344 N.C. 133 (1996)]

S.E.2d 148 (1992); *Stallings v. Gunter*, 99 N.C. App. 710, 394 S.E.2d 212, *disc. rev. denied*, 327 N.C. 638, 399 S.E.2d 125 (1990); *Callahan v. Rogers*, 89 N.C. App. 250, 365 S.E.2d 717 (1988); *Mathis v. May*, 86 N.C. App. 436, 358 S.E.2d 94, *disc. rev. denied*, 320 N.C. 794, 361 S.E.2d 78 (1987); *Johnson v. Podger*, 43 N.C. App. 20, 257 S.E.2d 684, *disc. rev. denied*, 298 N.C. 806, 261 S.E.2d 920 (1979). The Court of Appeals noted in *Ballenger* that the doctrine rests on the theory that " 'so long as the relationship of surgeon and patient continued, the surgeon was guilty of malpractice during that entire relationship for not repairing the damage he had done.' " *Ballenger*, 38 N.C. App. at 58, 247 S.E.2d at 293 (quoting *DeLong v. Campbell*, 157 Ohio St. 22, 25, 104 N.E.2d 177, 178 (1952), *overruled on other grounds by Oliver v. Kaiser Community Health Found.*, 5 Ohio St. 3d 111, 449 N.E.2d 438 (1983)). While the Court of Appeals has stated that the doctrine delays accrual of the claim until conclusion of the treatment—*e.g.*, *Stallings*, 99 N.C. App. at 714, 394 S.E.2d at 215—a more accurate statement would be that the doctrine tolls the running of the statute for the period between the original negligent act and the ensuing discovery and correction of its consequences; the claim still accrues at the time of the original negligent act or omission.

To benefit from this doctrine, a plaintiff must show both a continuous relationship with a physician and subsequent treatment from that physician. The subsequent treatment must consist of an affirmative act or an omission related to the original act, omission, or failure which gave rise to the claim. *Id.* at 715, 394 S.E.2d at 216.

We now affirm that the continuing course of treatment doctrine, only as set forth above, is the law in this jurisdiction. We expressly decline in this case to pass upon other features of the doctrine as developed and applied in the above-cited Court of Appeals cases.

[2] Defendant Hospital contends that even if the doctrine is the law in this jurisdiction, it has not been, and should not be, applied to institutional defendants such as itself. For the reasons hereinafter stated, we disagree.

A medical malpractice action is any action for damages for personal injury or death arising out of the furnishing of or failure to furnish professional services by a health care provider as defined in N.C.G.S. § 90-21.11. *Watts v. Cumberland Co. Hosp. Sys.*, 75 N.C. App. 1, 9, 330 S.E.2d 242, 249 (1985), *rev'd in part on other grounds*, 317 N.C. 321, 345 S.E.2d 201 (1986). N.C.G.S. § 90-21.11 defines "health care provider" as:

HORTON v. CAROLINA MEDICORP, INC.

[344 N.C. 133 (1996)]

[A]ny person who pursuant to the provisions of Chapter 90 of the General Statutes is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: medicine, surgery, dentistry, pharmacy, optometry, midwifery, osteopathy, podiatry, chiropractic, radiology, nursing, physiotherapy, pathology, anesthesiology, anesthesia, laboratory analysis, rendering assistance to a physician, dental hygiene, psychiatry, psychology; or *a hospital* as defined by G.S. 131-126.1(3); or a nursing home as defined by G.S. 130-9(e)(2); or any other person who is legally responsible for the negligence of such person, hospital or nursing home; or any other person acting at the direction or under the supervision of any of the foregoing persons, hospital, or nursing home.

N.C.G.S. § 90-21.11 (1993) (emphasis added). The General Assembly thus, for definitional purposes, has treated hospitals and other specified institutional health care providers identically with other health care professionals. Had it intended differential treatment for hospitals in the defense of medical malpractice claims, it could have so provided. It has not done so, and we thus find no basis in legislative policy for holding that the continuing course of treatment doctrine does not apply to hospitals in the same manner that it does to other health care providers.

Our case law suggests the same conclusion. This Court has long recognized that hospitals owe a duty of care to their patients. *Blanton v. Moses H. Cone Mem. Hosp.*, 319 N.C. 372, 375, 354 S.E.2d 455, 457 (1987); *Rabon v. Rowan Mem. Hosp.*, 269 N.C. 1, 21, 152 S.E.2d 485, 498-99 (1967). They must exercise ordinary care in the selection of their agents. *Blanton*, 319 N.C. at 375, 354 S.E.2d at 458. They must make a reasonable effort to monitor and oversee the treatment their staffs provide to patients. *Campbell v. Pitt Co. Mem. Hosp.*, 84 N.C. App. 314, 325, 352 S.E.2d 902, 908, *aff'd*, 321 N.C. 260, 362 S.E.2d 273 (1987), *overruled on other grounds by Johnson v. Ruark Obstetrics and Gynecology Assoc.*, 327 N.C. 283, 395 S.E.2d 85 (1990). They employ or grant privileges to numerous physicians, nurses, and interns, as well as administrative and other nonmedical staff, all for the purpose of providing medical care and treatment to patients. They charge for their services and may invoke the legal system to collect. The patient who avails himself of hospital facilities expects the institution, through its agents, to attempt to cure him and does not expect that its employees will act on their own responsibility. *See Rabon*, 269 N.C. at 11, 152 S.E.2d at 492. Upon a breach of a hospital's duty of

care, the affected patient is entitled to bring an action against it. *Blanton*, 319 N.C. at 374-76, 354 S.E.2d at 457-58. Thus, neither legislative policy nor North Carolina case law provides a rationale for differential treatment of hospitals in applying the continuing course of treatment doctrine.

Cases from other courts further bolster this approach. New York adopted the doctrine in a case in which a hospital was the defendant. *Borgia v. City of New York*, 12 N.Y.2d 151, 187 N.E.2d 777, 237 N.Y.S.2d 319 (1962). Michigan has codified the doctrine. Mich. Comp. Laws § 600.5838(1) (1987). The Michigan Court of Appeals has applied it to a hospital. *Sheldon v. Sisters of Mercy Health Corp.*, 102 Mich. App. 91, 300 N.W.2d 746 (1980). Other state courts have at least implicitly accepted the doctrine's applicability to hospitals without question. *See, e.g., Neureuther v. Calabrese*, 195 A.D.2d 1035, 600 N.Y.S.2d 526 (1993); *Robinson v. Mount Sinai Medical Ctr.*, 137 Wis. 2d 1, 402 N.W.2d 711 (1987); *Metzger v. Kalke*, 709 P.2d 414 (Wyo. 1985). The United States Court of Appeals for the Fourth Circuit, applying North Carolina law, has considered the doctrine in a case involving a hospital defendant. While it held the doctrine factually inapplicable in the particular case, it treated it as firmly established in North Carolina law by Court of Appeals decisions, and it evinced no doubt that the doctrine would apply to a hospital when the facts of a given case invoked it. *Conner v. St. Luke's Hosp., Inc.*, 996 F.2d 651 (4th Cir. 1993). Significantly, our research has disclosed no cases expressly refusing to apply the doctrine to hospitals.

Accordingly, we now hold not only that the continuing course of treatment doctrine, as hereinabove set forth, is the law in this jurisdiction, but also that it applies to hospitals in the same manner as it does to other health care providers. We turn, then, to its application to the facts alleged in plaintiff's complaint.

[3] Plaintiff alleged negligence causing injury in the course of her treatment at defendant Hospital on 15-16 November 1990. She further alleged a continuing relationship with defendant Hospital and subsequent treatment there relating to her injury caused by the original negligence. Her allegations, therefore, invoke application of the continuing course of treatment doctrine, as herein adopted, so as to toll the running of the statute of limitations contained in N.C.G.S. § 1-15(c).

Failure to repair the original damage provides the rationale for tolling the statute, however; the tolling thus continues only until such

damage is remedied. *Ballenger*, 38 N.C. App. at 58, 247 S.E.2d at 293. Plaintiff's allegations establish without contradiction that surgery was performed on 20 November 1990 to correct the damage the initial procedure caused. While plaintiff alleges complications associated with her recovery from these procedures, she does not allege that defendant Hospital should or could have taken further action to remedy the damage occasioned by its original negligence. The continuing course of treatment doctrine thus operates to toll the statute of limitations only from the time of the original negligence on 15-16 November 1990 until the performance of the corrective surgery on 20 November 1990. Plaintiff has failed to sustain her burden of alleging that further corrective action was required to remedy her original damage, thereby tolling the statute beyond the 20 November 1990 corrective surgery. The "last act of the defendant giving rise to the cause of action" within the meaning and intent of that phrase as used in N.C.G.S. § 1-15(c) thus occurred on 20 November 1990, and plaintiff's complaint filed on 6 December 1993 was untimely. Accordingly, the trial court properly granted defendant Hospital's Rule 12(b)(6) motion to dismiss.

For the reasons stated, the decision of the Court of Appeals is reversed, and the cause is remanded to that court for further remand to the Superior Court, Forsyth County, for reinstatement of the order of dismissal.

REVERSED AND REMANDED.

Justice FRYE concurring in part, dissenting in part.

I agree with the Court's conclusion that the continuing course of treatment doctrine applies to hospitals for the reasons set forth by the majority. However, I dissent from the portion of the Court's opinion which concludes that the trial court properly granted defendant Hospital's Rule 12(b)(6) motion to dismiss the complaint.

After determining that the continuous course of treatment doctrine is the law in this jurisdiction and that it applies to hospitals, the remaining issue in this case is whether the statute of limitations expired three years from the date of the corrective surgery on the plaintiff or three years from the date of plaintiff's discharge from the hospital. The majority concludes that the continuing course of treatment doctrine operated to toll the statute of limitations only from the time of the original negligence on 15-16 November 1990 until the per-

formance of the corrective surgery on 20 November 1990 because the plaintiff failed to allege that defendant Hospital should have taken further action to remedy the damage occasioned by its original negligence. I disagree.

This issue is one of first impression for this Court. I conclude that in *Stallings v. Gunter*, 99 N.C. App. 710, 394 S.E.2d 212, *disc. rev. denied*, 327 N.C. 638, 399 S.E.2d 125 (1990), our Court of Appeals correctly stated:

> It is not necessary under this doctrine that the treatment rendered subsequent to the negligent act itself be negligent, if the physician continued to treat the patient for the particular disease or condition created by the original act of negligence. *Callahan v. Rogers*, 89 N.C. App. 250, 255, 365 S.E.2d 717, 719 (1988) (treatment "after" the negligent act is within the 'continuing course of treatment' doctrine); *see Grubbs v. Rawls*, 235 Va. 607, 613, 369 S.E.2d 683, 687 (1988) (plaintiff could wait until the end of treatment "to complain of any negligence which occurred *during* that treatment") (emphasis in original); *see also Holdridge v. Heyer-Schulte Corp.*, 440 F. Supp. 1088, 1098 ([N.D.N.Y.] 1977) (the 'continuing course of treatment' doctrine is applicable "even if there are no further acts of malpractice in the continued treatment")[.]

*Id.* at 714-15, 394 S.E.2d at 215-16. Consistent with the majority's opinion, the statute is tolled until the conclusion of the physician's treatment of the patient, so long as the patient has remained under the continuous treatment of the physician for the injuries which gave rise to the cause of action.

In the instant case, applying these same rules to defendant Hospital, as a result of the alleged negligence of the hospital's nursing staff, plaintiff sufficiently alleged in her "More Definite Statement" ordered by the trial court:

> Failure of the nursing staff to not perceive that the plaintiff was not voiding and allowing her bladder to remain distended for a period of over 24 hours resulted in (i) plaintiff's second surgery and the complications associated therewith, (ii) plaintiff's extended hospital stay up through December 6, 1990, at which time she was discharged with the Foley catheter still in place, (iii) many complications thereafter as a result of the problems with her bladder, (iv) breathing problems from fluid overload and

IN RE GOLIA-PALADIN

[344 N.C. 142 (1996)]

mild Adult Respiratory Distress Syndrome, wound infection[,] and urinary tract infection.

Under our notice pleading, these allegations are sufficient to show that plaintiff's hospital treatment for the injuries which gave rise to the cause of action continued until 6 December 1990, the date of her discharge from the hospital, thus satisfying the continuous course of treatment pleading requirements. Thus, as to defendant Hospital, the continuing course of treatment doctrine operates to toll the statute of limitations from the time of the original negligence on 15-16 November 1990 until her discharge from the hospital on 6 December 1990. Therefore, I would hold that plaintiff's action was not time barred by the statute of limitations and would affirm the Court of Appeals' decision.

Chief Justice MITCHELL and Justice LAKE join in this concurring and dissenting opinion.