Curtis v. Barnet, 2011 NCBC 24.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

KEVIN CURTIS, Derivatively and on
Behalf of Nominal Defendant DUKE
ENERGY CORPORATION,

        Plaintiff,

        v.

WILLIAM BARNET, III, G. ALEX
BERNHARDT, SR., MICHAEL G.
BROWNING, ANN MAYNARD GRAY,
JAMES H. HANCE, JR., JAMES T.
RHODES, and JAMES E. ROGERS,

        Defendants,

and

DUKE ENERGY CORPORATION,

        Nominal Defendant.

IN THE GENERAL COURT OF
JUSTICE
SUPERIOR COURT DIVISION
10 CVS 21196

ORDER & OPINION

*Jackson & McGee, LLP by Gary W. Jackson and Barroway Topaz Kessler Meltzer & Check, LLP by Eric Zagar for Plaintiff Kevin Curtis.*

*McGuireWoods LLP by Douglas W. Ey, Jr. and Sidley Austin LLC by Steven M. Bierman, Dorothy J. Spenner, and Jackie A. Lu for Defendants.*

Murphy, Judge.

{1}    **THIS MATTER** is before the Court upon Defendants' Motion to

Dismiss Plaintiff's Shareholder Derivative Complaint.  Defendants allege that

Plaintiff's Complaint should be dismissed because: (1) it is time barred under the

applicable statute of limitations; (2) it fails to state a claim upon which relief can be granted; and (3) Plaintiff's failure to make a pre-suit demand is not excused.

{2}     The Court decides the Motion without a hearing pursuant to Rule 15.4 of the General Rules of Practice and Procedure for the North Carolina Business Court.

{3}     After considering the Complaint, the Motion, and the briefs and submissions of the parties, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Shareholder Derivative Complaint, in its entirety.

## I.

## PROCEDURAL HISTORY

{4}     On October 14, 2010, Plaintiff Kevin Curtis filed a Shareholder Derivative Complaint on behalf of Nominal Defendant Duke Energy Corporation ("Duke Energy") against certain individual members of Duke Energy's Board of Directors ("Defendants").

{5}     This matter was transferred to the North Carolina Business Court as a mandatory complex business case on January 5, 2011, and subsequently assigned to me on January 7, 2011.

{6}     On February 14, 2011, Defendants jointly filed their Motion to Dismiss with supporting brief alleging and contending that Plaintiff's Complaint should be dismissed because: (1) it is time barred under the applicable statute of limitations; (2) it fails to state a claim upon which relief can be granted; and (3) Plaintiff's failure to make a pre-suit demand is not excused.

{7}     Plaintiff filed his responsive brief in opposition to Defendants' Motion to Dismiss on March 31, 2011, to which Defendants filed their reply on April 20, 2011.

## II.

## FACTS

{8}     Prior to September 2006, Crescent Resources, LLC ("Crescent") was a wholly owned subsidiary of Duke Energy.  Compl. ¶ 19.

{9}     In September 2006, Duke Energy's Board of Directors approved a series of transactions, hereinafter collectively referred to as the "Crescent Transaction."

{10}    The Crescent Transaction involved Crescent borrowing approximately $1.225 billion from third-party lenders, which the Defendants knew was more debt than Crescent could reasonably service.

{11}    Crescent then transferred $1.187 billion of the loan proceeds to Duke Energy.

{12}    In addition to the $1.225 billion borrowed from third-party lenders, the Crescent Transaction also required Crescent to assume $215 million of Duke Energy's guaranty liabilities.  Compl. ¶ 21.

{13}    Plaintiff contends that the Crescent Transaction ultimately forced Crescent into insolvency and, as a consequence, a committee of Crescent's creditors filed a lawsuit against Duke Energy and certain of its employees to recover the $1.187 billion that was fraudulently transferred to Duke Energy.

{14}   Plaintiff further contends that by approving the Crescent Transaction, the Defendants breached their fiduciary duties of loyalty and good faith, resulting in damages to Duke Energy.

{15}   Duke Energy's Form 10-Q filed with the Securities and Exchange Commission ("SEC") on November 9, 2006, described the Crescent Transaction, in part, as follows:

> On September 7, 2006, an indirect wholly owned subsidiary of Duke Energy closed an agreement to create a joint venture of Crescent (the Crescent JV) with Morgan Stanley Real Estate Fund V U.S., L.P. (collectively the "MS Members"). The joint venture, Crescent, and Crescent's subsidiaries entered into a credit agreement with third party lenders under which Crescent borrowed approximately $1.23 billion, of which approximately $1.19 billion was immediately distributed to Duke Energy. Immediately following the debt transaction, the MS Members collectively acquired 49% membership interest in the Crescent JV from Duke Energy for a purchase price of approximately $415 million. The MS Members 49% interest reflects a 2% interest in the Crescent JV issued by the joint venture to the President and Chief Executive Officer of Crescent. Accordingly, Duke Energy has an effective 50% ownership in the equity of the Crescent JV for financial reporting purposes. Compl. ¶ 20.

{16}   Defendants allegedly valued Crescent at more than $1.7 billion despite indications on both Crescent's and Duke Energy's books that Crescent's principal assets were valued at only $1.2 billion. Compl. ¶ 25.

{17}   By the beginning of 2007, a few months after the Crescent Transaction closed, Crescent was already having trouble generating sufficient earnings to service its debt. Compl. ¶ 27.

{18}    By the second quarter of 2007, Crescent fell so far below its required earnings coverage ratio that the lenders imposed a "cash trap," requiring Crescent and its subsidiaries to pledge their deposit accounts to the lenders.  By the third quarter of 2007, Crescent and its subsidiaries were forced to grant liens on their real estate properties to their lenders.  Compl. ¶¶ 27-28.

{19}    In June 2009, Crescent filed for bankruptcy in the United States Bankruptcy Court for the Western District of Texas ("Bankruptcy Court"), and in May 2010, the Bankruptcy Court confirmed Crescent's plan of reorganization, which established the Crescent Resources Litigation Trust ("Litigation Trust") to pursue claims against Duke Energy for fraudulent transfer in connection with the Crescent Transaction.  Compl. ¶ 30.

{20}    In his complaint, Plaintiff contends that, in breach of their fiduciary duties of loyalty and good faith, Defendants knew that:

    a.    Crescent received nothing of value in exchange for the transfer to Duke Energy of the $1.187 billion of loan proceeds;
    b.    Crescent had insufficient assets and earnings to service the debt they forced Crescent to incur, and thus Crescent would be rendered insolvent as a result of the Crescent Transaction; and
    c.    the sole purpose of the Crescent Transaction was to funnel cash to Duke Energy at the expense of Crescent and its creditors.

Compl. ¶¶ 32-33.

# III.

# ARGUMENT

## A.

## LEGAL STANDARD

{21}    Pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, a claim should be dismissed if: (1) no law exists to support the claim; (2) sufficient facts to make out a valid claim are absent; or (3) facts are disclosed that will necessarily defeat the claim. *See Perry v. Carolina Builders Corp.*, 128 N.C. App. 143, 146, 493 S.E.2d 814, 816 (1997).

{22}    In ruling on a 12(b)(6) motion to dismiss, the Court must accept all well pleaded factual allegations as true, but the Court does not have to accept as true legal conclusions, unwarranted deductions of fact, or unreasonable inferences. *See Strickland v. Hedrick*, 194 N.C. App. 1, 20, 669 S.E.2d 61, 73 (2008).

{23}    "A statute of limitations defense may properly be asserted in a N.C.R. Civ. P. 12(b)(6) motion to dismiss if it appears on the face of the complaint that such a statute bars the claim." *Horton v. Carolina Medicorp*, 344 N.C. 133, 136, 472 S.E.2d 778, 780 (1996) (internal quotation omitted).  Once the defendant raises a statute of limitations defense, the burden of showing that the action was timely filed is on the plaintiff, who must show that the relevant statute of limitations has not expired. *Id.*; *see also Shepard v. Ocwen Fed. Bank, FSB*, 172 N.C. App. 475, 478, 617 S.E.2d 61, 63 (2005); *Ventriglia v. Deese*, 194 N.C. App. 344, 350-51, 669 S.E.2d 817, 821 (2008).

## B.

## ANALYSIS

## 1.

## STATUTE OF LIMITATIONS

{24}    Pursuant to Section 55-7-47 of the North Carolina General Statutes[1], Plaintiff contends that "the laws of the jurisdiction of incorporation" (in this case, Delaware) govern the statute of limitations relating to this matter.  N.C. Gen. Stat. § 55-7-47 (2011).

{25}    The Court agrees with Plaintiff and concludes that because Duke Energy is a Delaware corporation (Compl. ¶ 8), Delaware law governs this matter.

{26}    "A three-year statute of limitations applies in Delaware to claims arising from a promise, including claims for breach of fiduciary duty and fraud." Del. Code Ann. tit. 10, § 8106(a)(2011); *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, No. 4119-VCS, 2010 Del. Ch. LEXIS 22, *24 (Del. Ch. Jan. 27, 2010) (internal quotations omitted).

{27}    "Under Delaware law, a plaintiff's cause of action accrues at the moment of the wrongful act – not when the harmful effects of the act are felt – even if the plaintiff is unaware of the wrong." *In re Coca-Cola Enters., Inc. S'holders Litig.*, No. 1927-CC, 2007 Del. Ch. LEXIS 147, *18 (Del. Ch. Oct. 17, 2007).

---

[1] Section 55-7-47 of the North Carolina General Statutes provides that "[i]n any derivative proceeding in the right of a foreign corporation, the matters covered by this Part shall be governed by the laws of the jurisdiction of incorporation of the foreign corporation . . . ." N.C. Gen. Stat. § 55-7-47 (2011).  The North Carolina legislature has defined a "foreign corporation" as "a corporation for profit incorporated under a law other than the law of this State." N.C. Gen. Stat. § 55-1-40(10) (2011).

{28}    However, [w]hen a complaint asserts a claim that is on its face barred by the statute of limitations, the plaintiffs bear the burden of pleading specific facts demonstrating that the statute was tolled. *Id.* at *24.

{29}    "Equitable tolling will toll the statute of limitations for claims of wrongful self-dealing . . . where a plaintiff reasonably relies on the competence and good faith of a fiduciary." *Id.* Equitable tolling or any other theory, however, cannot toll the statute of limitations "beyond the point at which the plaintiff had actual knowledge or should have been aware of the facts giving rise to the wrong." *Id.* at *25.

{30}    In the case at bar, the Court concludes that Plaintiff's claims for breach of fiduciary duty, as asserted in the Complaint, are subject to Delaware's three-year statute of limitations that "accrue[d] at the moment of the wrongful act, even if plaintiff is unaware of the wrong." *In re Coca-Cola*, 2007 Del. Ch. LEXIS 147, * 18 (internal quotations omitted). Therefore, the time at which the harmful effects were felt is irrelevant. *Id.*

{31}    The "wrongful act" from which Plaintiff's claim arises was the Board's approval of the Crescent Transaction on September 7, 2006. Compl. ¶¶ 3, 20. Plaintiff filed his Verified Complaint on October 14, 2010, more than four years after the alleged wrongful act.

{32}    Plaintiff contends that, under Delaware law, the statute of limitations is subject to the "time of discovery" rule, and cites *Morton v. Sky Nails*, 884 A.2d 480 (Del. 2005) in support of their position. *Morton* provides that "under the time of

discovery rule, the statute of limitations does not begin to run until a party knows or has reason to know that he/she has been injured." *Morton*, 884 A.2d at 481 (applying the "time of discovery" rule to limitations on personal injury tort claims, but not to breach of fiduciary duty claims).

{33}    Even if the Court applied the "time of discovery" rule in this case, only "injuries or conditions which are inherently unknowable [to a blamelessly ignorant plaintiff] postpone the commencement of the statute-of-limitations period until the victim discovered or should have discovered the wrong." *Hodges v. Smith*, 517 A.2d 299, 300 (1986).  Moreover, "[t]he determination of whether or not a suit is barred by the statute of limitations depends upon whether the condition which is the product of the alleged negligence was inherently unknowable, and, if so, when plaintiffs knew or should have known of the condition." *Id.* at 301.

{34}    Here, Plaintiff neither pleads specific facts of wrongful self-dealing, demonstrating that the statute of limitations has or should be tolled, nor does Plaintiff establish itself as the blamelessly ignorant party that sustained an "inherently unknowable" injury.

{35}    Notwithstanding the specific reference in the Complaint to Duke Energy's November 9, 2006 public SEC filing[2] that sets forth the salient terms of the Crescent Transaction (Compl. ¶ 20), Plaintiff unequivocally alleges in the Complaint that by the beginning of 2007, and no later than the second quarter of

---

[2] The Securities and Exchange Commission ("SEC") maintains public records such as registration statements and *reports filed by regulated companies* that are available through the public reference facilities located at SEC Headquarters and also at the SEC website, http://www.sec.gov.

2007, Crescent was in serious financial trouble (Compl. ¶ 27). The second quarter of 2007, which the Court interprets to be the months of April, May and June, would be the latest point at which Plaintiff either had actual knowledge or was effectively put on notice of the circumstances giving rise to the alleged wrongful act. Compl. ¶ 27.

{36} Whether the Court finds that the wrongful act occurred at the completion of the Crescent Transaction in September 2006, or by the end of the second quarter of 2007, as alleged in the Complaint, the outcome remains the same.

{37} Under Delaware law, Plaintiff's claim of breach of fiduciary duty is subject to a three-year statute of limitations, which began to run in September 2006, or, at the very latest, by the end of the second quarter of 2007. Applying either time frame, Plaintiff filed his Complaint more than three years after the applicable statute of limitations began to run.

{38} Further, the Complaint failed to plead specific facts of any theory demonstrating a tolling of the period of limitations. Accordingly, the Court concludes that Plaintiff did not file his Complaint in a timely manner.

## 2.

## ALTERNATIVE CLAIMS

{39} Because the Court concludes that Plaintiff failed to file his Complaint before the expiration of the applicable statute of limitations, the Court need not consider Defendants' alternative claims for dismissal.

## IV.

## CONCLUSION

{40}   The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's claims for Defendants' breaches of fiduciary duty on the grounds that Plaintiff failed to file his Complaint within the applicable three-year statute of limitations pursuant to Delaware law.

{41}   For the reasons noted above, it is hereby **ORDERED** that Plaintiff's Complaint is dismissed in its entirety, with prejudice.

This 22nd day of July, 2011.