DILLON, Judge.
 

 *192
 
 Linda M. Bennett ("Plaintiff"), on behalf of her mother's estate, herself, and all others similarly situated, appeals from the trial court's order dismissing claims arising out of her mother's death. For the following reasons, we affirm in part and reverse in part.
 

 I. Background
 

 On 15 October 2014, Plaintiff filed a complaint against Defendants alleging various claims against them arising out of the circumstances surrounding the death of her mother, Elizabeth H. Maynard. The allegations in the complaint aver that Ms. Maynard had been living at a facility operated by Defendant Oaks of Alamance when she suffered a fall. She sustained injuries, but Plaintiff's sister, Pamela Roney, refused to authorize treatment for these injuries. Thereafter, Ms. Maynard's condition deteriorated, culminating eventually in her demise.
 

 Defendants all moved the trial court to dismiss Plaintiff's claims. The matter came on for a hearing in Alamance County Superior Court. The trial court entered an order dismissing all of Plaintiff's claims for failure to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure, applicable to medical malpractice actions. Specifically, the trial court concluded that all of her claims comprised "a medical malpractice action" and that the common law doctrine of
 
 res ipsa loquitur
 
 was inapplicable. Defendant entered written notice of appeal.
 

 II. Analysis
 

 Plaintiff essentially argues on appeal that Rule 9(j) of the North Carolina Rules of Civil Procedure is inapplicable to her claims, contending that her claims are not claims for "medical malpractice." We believe that most of her claims fall within the ambit of Rule 9(j) and, therefore, affirm the trial court's dismissal as to those claims. However, some of Plaintiff's claims stem from actions of some of Defendants which occurred after the death of Ms. Maynard and otherwise do not fall within the ambit of Rule 9(j). Accordingly, we reverse the trial court's Rule 9(j) dismissal as to those claims.
 

 Plaintiff did not attach a Rule 9(j) certification to her
 
 pro se
 
 complaint. Notwithstanding,
 
 *262
 
 Plaintiff "labeled" her claims in the complaint as follows:
 

 (1) Wrongful Death (including Loss of Chance);
 

 (2) Medical Negligence/Medical Malpractice (including Loss of Chance);
 

 *193
 
 (3) Negligence and/or Gross Negligence and/or Willful and Wanton conduct;
 

 (4) Loss of Sepulcher;
 

 (5) Breach of Contract, including Failure to provide bereavement benefits as contractually required;
 

 (6) Breach of Fiduciary Duty;
 

 (7) Bad Faith Failure to turn over requested documents and to provide information per statutory requirements;
 

 (8) Elder Abuse, and/or, Conspiracy to Commit Elder Abuse, and/or Failure to report Elder Abuse as required by North Carolina Statute;
 

 (9) Emotional Distress and Suffering of the Decedent's Survivors;
 

 (10) Pain and suffering of the Decedent; the Court
 

 (11) Conspiracy and/or Collusion with the above.
 

 Plaintiff lists these eleven (11) claims at the beginning of her complaint and then proceeds to make a number of general allegations. The complaint is otherwise not well organized. However, it is evident from those allegations that she seeks damages (1) for certain acts of Defendants which occurred prior to her mother's death
 
 and
 
 (2) for certain acts of some of the Defendants which occurred after her mother's death. We address each category of claims separately below.
 

 Regarding the claims arising from Defendants' acts occurring before the death of Plaintiff's mother, it appears that Plaintiff seeks damages due to the failure by Defendants to provide adequate medical care for her mother once she sustained injuries from her fall and/or the provision of certain medical treatment without informed consent. We hold that the trial court correctly concluded that these claims fell within the ambit of Rule 9(j) ; and, therefore, the trial court did not err in dismissing these claims.
 

 Rule 9(j) states in relevant part as follows:
 

 Any complaint alleging medical malpractice by a health care provider ... shall be dismissed unless ... [t]he pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have
 
 *194
 
 been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care[.]
 

 N.C. Gen.Stat. § 1A-1, Rule 9(j) (2014). As our Supreme Court has observed, Rule 9(j) "prevent[s] frivolous malpractice claims by requiring expert review
 
 before
 
 filing of the action."
 
 Moore v. Proper,
 

 366 N.C. 25
 
 , 31,
 
 726 S.E.2d 812
 
 , 817 (2012) (emphasis in original). Therefore, "a court must dismiss a complaint if it fails to meet the [Rule's] requirements."
 
 In re
 

 Wooden ex rel. Jones v. Hillcrest Convalescent Ctr., Inc.,
 

 222 N.C.App. 396
 
 , 402,
 
 731 S.E.2d 500
 
 , 505 (2012).
 

 Each of the Defendants in the present case falls within the statutory definition of health care provider.
 
 See
 

 Horton v. Carolina Medicorp, Inc.,
 

 344 N.C. 133
 
 , 137,
 
 472 S.E.2d 778
 
 , 781 (1996) (holding that "[a] medical malpractice action is any action for damages for personal injury or death arising out of the furnishing of or failure to furnish professional services by a health care provider as defined in [N.C. Gen.Stat.] § 90-21.11"). Specifically, sub-subdivision (a) of N.C. Gen.Stat. § 90-21.11 defines "health care provider" to include those "who ... [are] licensed[ ] or [ ] otherwise registered or certified to engage in the practice of ... medicine [.]" N.C. Gen.Stat. § 90-21.11(1)(a) (2012). The statute also includes hospitals, nursing homes, and adult care homes in this definition,
 
 see
 

 id.
 

 § 90-21.11(1)(b), as well as those who are "legally responsible for the negligence of," or "act[ ] at the direction or under the supervision of," such health care providers,
 
 see
 

 id.
 

 § 90-21.11(1)(c)-(d).
 

 *263
 
 Each of the claims for acts which occurred prior to Plaintiff's mother's death fits within the definition of "medical malpractice action," as set out in subdivision (2) of the statute. Specifically, subdivision (2) provides:
 

 (2) Medical malpractice action.-Either of the following:
 

 a. A civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider.
 

 b. A civil action against a hospital, a nursing home ..., or an adult care home ... for damages for personal injury or death, when the civil action (i) alleges a breach of administrative or corporate duties to the patient, including, but not limited to, allegations of negligent credentialing or negligent monitoring and supervision and (ii) arises from
 
 *195
 
 the same facts or circumstances as a claim under sub-subdivision a. of this subdivision.
 

 Id.
 

 § 90-21.11(2).
 

 Here, all of Plaintiff's claims stemming from actions leading up to the death of her mother concern the provision (or lack thereof) of health care to Plaintiff's mother. Plaintiff has not pleaded any facts which suggest that
 
 res ipsa loquitur
 
 applies. Accordingly, we hold that the trial court did not err in dismissing these claims for failure to include a certification pursuant to Rule 9(j).
 

 We are not persuaded by Plaintiff's argument that Rule 9(j) does not apply where no patient-physician relationship existed between Defendants and Plaintiff's mother, or, alternately, where Defendants were not furnishing professional health care services to her mother. As demonstrated by the language of N.C. Gen.Stat. § 90-21.11 and our Supreme Court's holding in
 
 Horton,
 
 the definition of medical malpractice under North Carolina law is not so restrictive, encompassing "action[s] for damages for ... death arising out of the furnishing of or failure to furnish professional services by a health care provider,"
 
 see
 

 344 N.C. at 137
 
 ,
 
 472 S.E.2d at 781
 
 , including the provision of such services by nursing homes, adult care homes, and those "legally responsible for the negligence of," or who "act[ ] at the direction or under the supervision of," these nursing homes and adult care homes,
 
 see
 
 N.C. Gen.Stat. § 90-21.11(1)(a)-(d) (2012). Furthermore, taking the allegations in Plaintiff's complaint as true, as we are required to do,
 
 see
 

 Acosta v. Byrum,
 

 180 N.C.App. 562
 
 , 566,
 
 638 S.E.2d 246
 
 , 250 (2006), Defendants were, indeed, furnishing professional health care services to her mother at the time she died, Plaintiff's arguments on appeal to the contrary notwithstanding. Therefore, we hold that the claims alleged in Plaintiff's complaint for certain acts of Defendants which occurred prior to her mother's death are medical malpractice claims. Accordingly, the trial court did not err in granting Defendants' motions to dismiss where Plaintiff failed to include the required certification under Rule 9(j) of the Rules of Civil Procedure.
 
 [1]
 

 *196
 
 However, turning to Plaintiff's claims arising from actions by some of the Defendants after the death of her mother, it appears that Plaintiff is claiming damages due to (1) the negligence by some of the Defendants in handling her mother's body ("Loss of Sepulcher") and (2) the breach of contract by Defendant Hospice for failing to provide to her certain bereavement services. We hold that these claims do not fall within the ambit of Rule 9(j). Specifically, neither the claim based on the mishandling of Ms. Maynard's body after her death, nor the breach of contract claim for failure to provide bereavement services, involves the provision of medical care under N.C. Gen.Stat. § 90-21.11. Accordingly, we hold that the trial
 
 *264
 
 court erred in dismissing these claims for failure to include a Rule 9(j) certification.
 
 [2]
 

 AFFIRMED IN PART, REVERSED IN PART.
 

 Chief Judge McGEE and Judge DAVIS concur.
 

 [1]
 

 Plaintiff also seeks to raise several arguments not raised below for the first time on appeal, contending, for example, that Ms. Maynard's informed consent was ineffective. However, our Court has recently held that "[c]laims based on lack of informed consent are medical malpractice claims requiring expert testimony and [ ] must comply with the requirements of Rule 9(j)."
 
 Kearney v. Bolling,
 
 --- N.C.App. ----, ----,
 
 774 S.E.2d 841
 
 , 850 (2015). Moreover, issues or theories of a case not raised at the trial level will not be entertained for the first time on appeal.
 
 See, e.g.,
 

 Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment,
 

 354 N.C. 298
 
 , 309,
 
 554 S.E.2d 634
 
 , 641 (2001). Therefore, we do not reach these remaining arguments.
 

 [2]
 

 Whether the complaint otherwise contains sufficient allegations to state claims for the post-death actions by some of the Defendants is not before us on appeal.