Beam v. Sunset Fin. Servs., Inc., 2019 NCBC 55.

STATE OF NORTH CAROLINA

IREDELL COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 2925

DAVID M. BEAM, JR., by and
through his attorney-in-fact Donna B.
Mayes; DONNA B. MAYES, as
Executrix of the Estate of Doris P.
Beam; and DONNA B. MAYES, as
Trustee of the DAVID M. BEAM
IRREVOCABLE TRUST dated
September 12, 2001,

                Plaintiffs,

v.

SUNSET FINANCIAL SERVICES,
INC.,

                Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO
DISMISS**

1.     **THIS MATTER** is before the Court on the Motion to Dismiss filed by Defendant Sunset Financial Services, Inc. ("Defendant") on February 1, 2019 (the "Motion"). (ECF No. 9.) Defendant seeks to dismiss all claims asserted against it by Plaintiffs David M. Beam, Jr. ("David Beam"), by and through his attorney-in-fact Donna B. Mayes; Donna B. Mayes, as Executrix of the Estate of Doris P. Beam ("Doris Beam") (David and Doris Beam collectively, the "Beams") and as Trustee of the David M. Beam Irrevocable Trust (the "Trust") dated September 12, 2001 (collectively, "Plaintiffs"). After full briefing on the Motion and a hearing held on March 21, 2019, for the reasons stated herein, the Court **GRANTS in part** and **DENIES in part** the Motion.

*Tin, Fulton, Walker & Owen, PLLC, by Sam McGee, for Plaintiffs.*

*Moore & Van Allen, PLLC, by Elena Mitchell, Mark A. Nebrig, and Christopher D. Tomlinson, for Defendant.*

Robinson, Judge.

## I. INTRODUCTION

2. This litigation involves claims by Plaintiffs[1] arising from Defendant's investment services, rendered by and through Defendant's now-deceased, former employee, Jeffrey Lipscomb ("Lipscomb") and Defendant's other agents after Lipscomb's termination. Plaintiffs allege that Defendant, first by and through Lipscomb and thereafter through its other agents not yet known, mismanaged the Beams' investment accounts. Plaintiffs allege that Defendant should be liable for its actions and inactions, by and through its agents Lipscomb and others, that resulted in the Beams' investments failing and the depletion of the Beams' life savings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

3. The Court does not make findings of fact on a motion to dismiss pursuant to Rule 12(b)(6) but only recites those factual allegations that are relevant and necessary to the Court's determination of the Motion.

4. Defendant is a company duly organized and existing under the laws of the State of Washington, registered to do business in North Carolina. (Compl. ¶ 5.) In 2008, Lipscomb was an employee and agent of Defendant. (Compl. ¶ 7.)

---

[1] While the Complaint broadly alleges that "Plaintiffs" were customers of Defendant, (*see, e.g.,* Compl. ¶ 7, ECF No. 3 ["Compl."]), it appears that only the Beams, but not the Trust, did business with Defendant. Accordingly, the Court distinguishes throughout this Order and Opinion, in the clearest way possible, circumstances directly involving the Beams from allegations relevant to all Plaintiffs collectively.

5. Prior to 2008, David Beam, who is in his early eighties, and his wife Doris Beam (now-deceased), placed their life savings in real estate holdings and stock in David Beam's former employer, Duke Energy. (Compl. ¶¶ 6–7, 22.) Beginning in 2008, upon the advice of Lipscomb, the Beams shifted their investments out of these "conservative investments" and consolidated them "in high risk companies such as start-up energy companies and oil well drilling speculation companies." (Compl. ¶ 7.) In total, the Beams invested approximately two million dollars in companies "at the direction of Lipscomb." (Compl. ¶ 9.)

6. While employed by Defendant, Lipscomb "cultivated a close personal relationship" with the Beams. (Compl. ¶ 8.) He "frequently visit[ed] their home and [became] involved in virtually every aspect of their lives[,]" becoming their "most trusted advisor." (Compl. ¶¶ 8–9.)

7. In or around 2010, Lipscomb was terminated from his employment with Defendant. (Compl. ¶ 11.) Although the Beams' investments were still with Defendant at that time, Defendant did not inform the Beams that Lipscomb was no longer employed by Defendant. (Compl. ¶ 13.) After Lipscomb's termination, the Beams' accounts continued to be managed by Defendant, but Defendant failed at that time, or any time thereafter, to properly inform the Beams regarding the state of their investments and what options they had with respect to those investments. (Compl. ¶¶ 13–15.)

8. Plaintiffs also allege that, although Lipscomb no longer worked for Defendant, Defendant allowed Lipscomb to remain involved in the Beams'

investments. (Compl. ¶ 16.) Lipscomb was in frequent contact with the Beams about their investment accounts, through as recently as December 2016, despite having stopped working for Defendant in 2010. (Compl. ¶¶ 17–18.) Throughout this time and regardless of his employment status with Defendant, Lipscomb continued to give the Beams assurances about their investments, saying that they "would be successful and would result in substantial earnings[.]" (Compl. ¶ 19.)

9. Plaintiffs also allege that Defendant, through Lipscomb and otherwise, made assurances to the Beams that their investments were suitable for investors of their age, financial situation, sophistication, and investment goals. (Compl. ¶¶ 24, 26(a), (c).) Plaintiffs also allege that Defendant misrepresented or made misleading statements to the Beams regarding the profitability of their investments, how well the investments were doing, and that the investments were capable of recovering from any difficulties. (Compl. ¶¶ 26(b), (d), (e).) Additionally, Plaintiffs allege that Defendant concealed the status of the Beams' investments from them and concealed Lipscomb's employment status, the reason for the change in his status, and who was truly managing or otherwise in charge of the Beams' investments. (Compl. ¶¶ 27(d), (e), (g)–(j).)

10. At some point in 2016, the Beams became aware that some of their investments managed by Defendant had failed and that their "life savings/nest egg was gone or at least substantially depleted." (Compl. ¶ 22.) Plaintiffs allege that as a result of Defendant's actions, Plaintiffs are currently unaware of the status of their

investments or which of Defendant's agents has been managing the Beams' accounts. (Compl. ¶ 21.)

11. Before instituting this action, in May 2017, Plaintiffs commenced an arbitration proceeding against Defendant with the Financial Industry Regulatory Authority ("FINRA"). In September 2018, the panel assigned by FINRA to consider Plaintiffs' arbitration demand dismissed Plaintiffs' claims against Defendant under FINRA's six-year eligibility rule. The six-year eligibility rule provides that no claim is eligible for arbitration "where six years have elapsed from the occurrence or event giving rise to the claim." FINRA Rule 12206(a).

12. After dismissal of the arbitration proceeding, Plaintiffs filed this action on November 26, 2018, (ECF No. 3), asserting eight claims for relief against Defendant: (1) breach of fiduciary duty; (2) constructive fraud; (3) fraud and misrepresentation; (4) unfair and deceptive trade practices ("UDTP"); (5) violation of the North Carolina Securities Act ("NCSA"); (6) negligence, including negligent hiring, supervision and retention; (7) breach of contract; and (8) punitive damages. On January 4, 2019, this action was designated as a mandatory complex business case by order of Mark Martin, then-Chief Justice of the Supreme Court of North Carolina, (ECF No. 1), and thereafter assigned to the undersigned by the Chief Business Court Judge, (ECF No. 2).

13. On February 1, 2019, Defendant filed the instant Motion, (ECF No. 9), and supporting brief, (ECF No. 10). Plaintiffs filed their brief in opposition to the Motion on February 21, 2019. (ECF No. 11.) Defendant filed its reply brief on March 13,

2019. (ECF No. 16.) The Court held a hearing on the Motion on March 21, 2019, at which all parties were represented by counsel. The Motion is now ripe for resolution.

### III.    LEGAL STANDARD

14.    In ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"), the Court reviews the allegations in the Complaint in the light most favorable to Plaintiffs. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc. (Christenbury II)*, 370 N.C. 1, 5, 802 S.E.2d 888, 891 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court accepts all well-pleaded factual allegations in the relevant pleading as true. *See Krawiec v. Manly*, 370 N.C. 602, 606, 811 S.E.2d 542, 546 (2018). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation omitted).

15.    Our Supreme Court has noted that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 821 S.E.2d 729, 736–37 (N.C. 2018) (quoting *Wood v. Guilford County*, 355 N.C. 161, 166,

558 S.E.2d 490, 494 (2002)). This standard of review for Rule 12(b)(6) is the standard our Supreme Court "uses routinely . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 737 n.7 (citations omitted).

## IV. ANALYSIS

16. The Motion seeks dismissal of all eight of Plaintiffs' claims on both procedural and substantive grounds pursuant to Rules 12(b)(6) and 9(b). Specifically, Defendant argues that Plaintiffs' allegations of fraud fall below the heightened pleading requirement of Rule 9(b) and that Plaintiffs' other claims also fail because Plaintiffs have not alleged sufficient facts to support each element of each claim. Defendant also argues that each claim—other than Plaintiffs' constructive fraud claim—is time-barred by the applicable statutes of limitations. The Court first addresses whether Plaintiffs have sufficiently pled their claims and then addresses whether Plaintiffs' well-pled claims are nonetheless time-barred.

### A. Count I: Breach of Fiduciary Duty

17. Plaintiffs' claim for breach of fiduciary duty alleges that Defendant stood in a fiduciary relationship with the Beams given the broker/customer relationship with them and the close personal relationship Lipscomb, as Defendant's agent, cultivated with the Beams. (Compl. ¶ 29.)

18. "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013) (citing *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)). A fiduciary relationship can be created either by law (*de jure*), or in fact (*de*

*facto*). North Carolina law has yet to recognize that brokers, as a matter of law, stand in a fiduciary relationship with their customers. *See NNN Durham Office Portfolio 1, LLC v. Grubb & Ellis Co.*, 2016 NCBC LEXIS 95, at *99 (N.C. Super. Ct. Dec. 5, 2016) (finding that no case law supports "the theory that managing broker-dealers owe fiduciary duties to investors," especially when considering that our "Supreme Court has declined to find a fiduciary relationship in arm's-length borrower–lender transactions").

19. Here, the relationship between the Beams and Defendant is a typical broker-customer relationship. As a result, the Court declines to find, as a matter of law, that Defendant's relationship with the Beams creates a *de jure* fiduciary relationship. Accordingly, the Court must determine instead whether Plaintiffs have adequately alleged a *de facto* fiduciary relationship.

20. A *de facto* fiduciary relationship may arise where "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Green*, 367 N.C. at 141, 749 S.E.2d at 268 (quoting *Dalton*, 353 N.C. at 651, 548 S.E.2d at 707). However, "[t]he standard for finding a *de facto* fiduciary relationship is a demanding one: 'only when one party figuratively holds all the cards . . . have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen.'" *Lockerman v. S. River Elec. Membership Corp.*, 250 N.C. App. 631, 636, 794 S.E.2d 346, 352 (2016) (quoting *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008)).

21.     Notwithstanding this demanding standard, "[d]etermining whether a fiduciary relationship exists requires looking at the particular facts and circumstances of a given case." *Highland Paving Co. v. First Bank*, 227 N.C. App. 36, 42, 742 S.E.2d 287, 292 (2013) (citation and quotation marks omitted).  Accordingly, this Court has declined to dismiss breach of fiduciary duty claims premised on a *de facto* relationship at the Rule 12(b)(6) stage where Plaintiffs' factual allegations are sufficient to suggest such a relationship.  *See, e.g., Austin v. Regal Inv. Advisors, LLC*, 2018 NCBC LEXIS 3, at *19–22 (N.C. Super. Ct. Jan. 8, 2018); *Edwards v. Vanguard Fiduciary Tr. Co.*, 2018 NCBC LEXIS 237, at *18–21 (N.C. Super Ct. Dec. 21, 2018).

22.     Our Court of Appeals in *White v. Consolidated Planning, Inc.*, declined to dismiss pursuant to Rule 12(b)(6) a breach of fiduciary duty claim premised on facts similar to those alleged here.  166 N.C. App. 283, 293, 603 S.E.2d 147, 155 (2004).  In *White*, the defendant, Consolidated Planning, provided financial planning services to both individuals and businesses.  *Id.* at 288, 603 S.E.2d at 152.  The plaintiffs, an older married couple, were customers of Consolidated Planning and purchased various insurance and annuity products offered by Consolidated Planning through one of its agents, Robert White.  *Id.*  White, who was also the plaintiffs' son, mishandled plaintiffs' accounts, resulting in depletion of their retirement savings.  *Id.* at 288–89, 603 S.E.2d at 152–53.  Plaintiffs sued Consolidated Planning for, among other things, breach of the fiduciary duties Consolidated Planning allegedly owed to them by the nature of the parties' relationship by and through White.  *Id.* at 293, 603 S.E.2d at 155.  The Court concluded that the plaintiffs—who alleged that their age

and lack of financial sophistication led to their reliance on White and Consolidated Planning to properly manage their funds—sufficiently pled the existence of a fiduciary relationship to survive dismissal at the Rule 12(b)(6) stage. *Id.*

23. Similarly here, the Complaint alleges that the Beams were an elderly couple, (Compl. ¶ 6), who lacked financial sophistication, (Compl. ¶ 24), and who not only came to trust Lipscomb as their investment advisor, but also "involved [him] in virtually every aspect of their lives[,]" (Compl. ¶ 8). These facts are minimally sufficient at the Rule 12(b)(6) stage to plead the existence of a *de facto* fiduciary relationship.

24. Defendant also contends that Plaintiffs have only alleged "in a conclusory fashion how a purported fiduciary duty to them was breached." (Mem. Supp. Mot. Dismiss. 8, ECF No. 10 ["Supp. Mem."].) The Court disagrees. Plaintiffs' breach of fiduciary duty claim is based on the totality of their allegations of fraud and misconduct. (Compl. ¶ 33.) Plaintiffs explicitly list these allegations in several places in the Complaint. (*See* Compl. ¶¶ 26, 27, 53.) Accordingly, Plaintiffs have sufficiently pled a breach of Defendant's purported fiduciary duty. As a result, the Court finds that Plaintiffs have alleged facts supporting a claim for breach of a fiduciary duty sufficient to survive dismissal at this time, and the Motion is DENIED in this regard.

## B. Count II: Constructive Fraud

25. Plaintiffs also bring a constructive fraud claim on the same basis as their breach of fiduciary duty claim and additionally allege that Defendant "took

advantage of its relationship [with the Beams] in a way that was intended to, and in fact did, injure Plaintiffs and benefit the Defendant." (Compl. ¶ 40.)

26. A constructive fraud claim requires a plaintiff to allege and show (1) that the defendant owes the plaintiff a fiduciary duty; (2) that the defendant breached that duty; and (3) that the defendant sought to benefit himself in the transaction. *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 620, 730 S.E.2d 763, 767 (2012); *White*, 166 N.C. App. at 294, 603 S.E.2d at 156. "A claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud[,]" and accordingly does not need to meet the Rule 9(b) pleading requirement. *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 482, 593 S.E.2d 595, 599 (2004).

27. The difference between a breach of fiduciary duty claim and a constructive fraud claim is that the latter has a third element: that the defendant benefitted from its breach. *BDM Invs. v. Lenhil, Inc.*, 2014 NCBC LEXIS 6, at *24 (N.C. Super. Ct. Mar. 20, 2014). This element requires a plaintiff to allege that the defendant took "advantage of his position of trust to the hurt of plaintiff" and sought "his own advantage in the transaction." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997). Having already concluded that Plaintiffs have sufficiently alleged the existence of a fiduciary relationship and breach thereof, the Court now considers whether Plaintiffs have sufficiently alleged the third, and distinguishing, element of a constructive fraud claim.

28. Other than Plaintiffs' conclusory statement that Defendant "took advantage of its relationship [with the Beams] in a way that was intended to, and in fact did, injure Plaintiffs and benefit the Defendant[,]" (Compl. ¶ 40), the Complaint does not indicate how Defendant benefitted from its actions and inactions, other than by continuing its relationship with the Beams. North Carolina law is clear that "[t]he benefit sought by the defendant [to allege the third element of a constructive fraud claim] must be more than a continued relationship with the plaintiff." *Sterner v. Penn*, 159 N.C. App. 626, 631, 583 S.E.2d 670, 674 (2003) (quoting *Barger*, 346 N.C. at 667, 488 S.E.2d at 224). Plaintiffs' failure to plead facts to support their allegation that Defendant benefitted from its breach of its fiduciary duty is fatal to their claim. Accordingly, the Motion is GRANTED as to Plaintiffs' constructive fraud claim, and this claim is therefore DISMISSED.

C.    **Count III: Fraud and Misrepresentation**

29. Plaintiffs also assert a fraud claim against Defendant premised on (i) Defendant's affirmative misrepresentations about the suitability of the Beams' investments, the profitability of those investments, what risks were involved, and how well the investments were doing, (Compl. ¶ 26), and (ii) Defendant's concealment of material facts or omissions regarding the Beams' investments, including that the Beams' investments were doing poorly and that Lipscomb's employment status had changed, (Compl. ¶ 27).

30. To sufficiently plead their claims for fraud, Plaintiffs must allege "(1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive;

(3) made with the intent to deceive; (4) which does in fact deceive; (5) resulting in damage to the injured party." *Rider v. Hodges*, 255 N.C. App. 82, 88, 804 S.E.2d 242, 248 (2017) (quoting *Forbis v. Neal*, 361 N.C. 519, 526–27, 649 S.E.2d 382, 388 (2007)). North Carolina permits fraud claims to be based on either affirmative misrepresentations or by concealment or nondisclosure of material facts. *See Kron Medical Corp. v. Collier Cobb & Assoc., Inc.*, 107 N.C. App. 331, 339, 420 S.E.2d 192, 197 (1992) (citing *Rosenthal v. Perkins*, 42 N.C. App. 449, 452, 257 S.E.2d 63, 66 (1979)). Fraud claims based on both theories must be pled with particularity pursuant to Rule 9(b), but what is required to meet that standard differs between the two.

31. Where a fraud claim is premised on affirmative misrepresentations, a plaintiff "must allege (1) the time, place and content of the misrepresentation, (2) the identity of the person making the representation and (3) what was obtained as a result of the fraudulent acts or representations" in order to sufficiently plead its claim. *Deluca v. River Bluff Holdings II, LLC*, 2015 NCBC LEXIS 12, at *21 (N.C. Super. Ct. Jan. 28, 2015) (internal quotation marks, brackets, and citation omitted). The alleged misrepresentations must also be "definite and specific," meaning that they must be "more than 'mere puffing, guesses, or assertions of opinions' but actual representations of material facts." *Id.* (quoting *Rowan County Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 659 (1992)).

32. By contrast, where a fraud claim is based on concealment or nondisclosure of material facts, a plaintiff must allege that the defendant(s) "had a duty to disclose

material information to [the plaintiff], as silence is fraudulent only when there is a duty to speak." *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *8 (N.C. Super. Ct. June 18, 2007) (citing *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976)). This Court has acknowledged that "fraud by omission is, by its very nature, difficult to plead with particularity." *Id.* at *9 (quoting *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997)). In so recognizing, our Court adopted the factors considered by the *Breeden* court on fraud by omission claims. *Id.* at *10. Accordingly, a plaintiff must allege:

> (1) the relationship [between plaintiff and defendant] giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what [the defendant] gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*Id.* (citing *Breeden*, 171 F.R.D. at 195); *see also Christenbury Eye Ctr., P.A. v. Medflow, Inc. (Christenbury I)*, 2015 NCBC LEXIS 64, at *13–14 (N.C. Super. Ct. June 19, 2015).

33. Turning first to Plaintiffs' allegations of affirmative misrepresentations, the Court concludes that Plaintiffs have failed to plead these with particularity. Other than generally asserting that the Beams relied upon the advice of Lipscomb to transfer their investments out of real estate and Duke Energy stock into "high risk companies[,]" Plaintiffs have not identified any misrepresentation made by one of

Defendant's agents regarding any single, specific investment. This lack of specificity is fatal to Plaintiffs' fraud claim.

34. Moreover, the general allegation that Defendant misrepresented that the investments were "suitable for the Beams" and "would do well over time and would recover from any difficulties" are the kind of "mere puffing, guesses, or assertions of opinions" that are insufficient to support a fraud claim. *See Deluca*, 2015 NCBC LEXIS 12, at *21 (citation omitted). Plaintiffs have also failed to identify when— other than sometime between 2008 and 2016—the alleged misrepresentations occurred. For all these reasons, Plaintiffs' fraud claim falls far short of the Rule 9(b) heightened pleading standard, and Plaintiffs' fraud claim—to the extent premised on any affirmative misrepresentations—is DISMISSED.

35. The Court also believes Plaintiffs' fraud claim premised on concealment or omission of material facts fails to meet Rule 9(b)'s heightened pleading requirement, even taking into consideration the difficulty of alleging a fraud claim on this basis. To be clear, Plaintiffs have alleged that Defendant had a duty to disclose information both about the status of the Beams' investments and that the manager of the Beams' investments had changed. Our Court of Appeals has held that a duty to disclose arises where there is a fiduciary relationship between the parties to the transactions. *Harton v. Harton*, 81 N.C. App. 295, 297–98, 344 S.E.2d 117, 119 (1986). Having already concluded above that Plaintiffs have sufficiently alleged the existence of a fiduciary relationship between the Beams and Defendant, Plaintiffs have sufficiently alleged a duty to disclose.

36. Notwithstanding that fact, Plaintiffs must, but have not, alleged what Defendant gained by withholding this information from the Beams. In light of the standard enunciated in *Breeden*, the Court believes Plaintiffs' complete failure to make this allegation is fatal to their fraud claim on this theory as well. Accordingly, Plaintiffs' fraud claim—to the extent premised on concealment or omissions of material facts—is also DISMISSED.

37. Although not separately labeled, Plaintiffs also appear to assert a claim for negligent misrepresentation in the alternative to their fraud claim. (Compl. ¶ 45.) However, a claim for negligent misrepresentation, just like a claim for fraud, must be pled with particularity pursuant to Rule 9(b). *Deluca*, 2015 NCBC LEXIS 12, at *20. Accordingly, because Plaintiffs have failed to plead their fraud claim with the level of particularity required by Rule 9(b), their negligent misrepresentation claim, pled in the alternative to and upon the same facts as their fraud claim,[2] also fails to satisfy the pleading requirements of Rule 9(b) and accordingly is DISMISSED.

### D. Count IV: Unfair and Deceptive Trade Practices

38. Plaintiffs also bring a claim under the State's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.G.S. § 75-1.1, alleging that "Defendant's acts of fraud, misrepresentation, constructive fraud and breaches of fiduciary duty . . . were all undertaken in the course of Defendant's business, in commerce[.]" (Compl. ¶ 47.) These same allegations support Plaintiffs' claim for violation of the NCSA. (*See*

---

[2] The Court notes, however, that Plaintiffs' negligent misrepresentation claim cannot be based on any alleged omissions. *Harrold v. Dowd*, 149 N.C. App. 777, 783, 561 S.E.2d 914, 919 (2002).

Compl. ¶ 50.) Plaintiffs' UDTP claim and NCSA claim are virtually indistinguishable from each other, as the allegations that support each claim do not appear under either claim heading but are instead based on an incorporation by reference of the general factual allegations appearing earlier in the Complaint. This framework leaves the Court, and more importantly Defendant, to guess which facts support Plaintiffs' UDTP claim and which support Plaintiffs' NCSA claim. In fact, the gravamen of Plaintiffs' Complaint is that Defendant acted fraudulently, or alternatively, negligently, in handling the Beams' investments.

39. This Court has determined that "[w]hen a [UDTP claim] is based on allegations of deceptive conduct, such allegations must be pleaded with particularity." *Regency Ctrs. Acquisition, LLC v. Crescent Acquisitions, LLC*, 2018 NCBC LEXIS 7, at *27 (N.C. Super. Ct. Jan. 24, 2018). Because Plaintiffs have failed to plead their fraud claims with the level of particularity required by Rule 9(b), they have also failed to satisfy the pleading requirements for a UDTPA claim based on that same conduct.

40. Additionally, to the extent Plaintiffs' UDTP claim is based on securities transactions, it is well established in this State that such transactions are beyond the scope of the UDTPA. *See Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 275, 333 S.E.2d 236, 241 (1985). The reason is that "such application would create overlapping supervision, enforcement, and liability in an area of law that is already pervasively regulated by state and federal statutes and agencies." *Sterner*, 159 N.C. App. at 633.

41. Plaintiffs, recognizing the securities exemption, argue that the exemption does not apply here because Plaintiffs do not know the nature of the Beams'

"alternative investments[,]" and therefore it is unclear whether their investments would be covered by the NCSA. (Pls.'s Mem. Opp'n Def.'s Mot. Dismiss 12, ECF No. 11 ["Opp'n Mem."].) Plaintiffs' argument proposes a very narrow view of the securities exemption to the UDTPA. Based on our Supreme Court's interpretation of "business activities[,]" as applied to securities transactions, it appears clear to this Court that the securities exemption is broader than Plaintiffs' interpretation and apply as a bar to Plaintiffs' claim here. *See HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 403 S.E.2d 483 (1991).

42. The *HAJMM* Court—interpreting the definitions of "commerce" and "business activities"—concluded that securities transactions are not "in or affecting commerce" as it is defined in the UDTPA. *Id.* at 594, 403 S.E.2d at 493 ("Securities transactions are related to the creation, transfer, or retirement of capital. Unlike regular purchase and sale of goods, or whatever else the enterprise was organized to do, they are not 'business activities' as that term is used in the [UDTPA].").

43. Here, Plaintiffs allege that upon Lipscomb's advice, "[the Beams] shifted their investments from conservative investments in real estate and Duke Energy stock, and consolidated their investments in high risk companies[.]" (Compl. ¶ 7.) The Beams' investments—regardless of their "alternative" nature—are nonetheless transactions "related to the creation, transfer, or retirement of capital" which the *HAJMM* Court has recognized as falling within the securities exemption to the UDTPA. Therefore, Plaintiffs' allegations both fall outside the scope of the UDTPA

and are insufficiently pled to survive. Accordingly, Plaintiffs' UDTP claim is DISMISSED.

### E. Count V: Violation of the NCSA

44. In nearly verbatim language as used to support Plaintiffs' UDTP claim, Plaintiffs allege "Defendant's act of fraud, misrepresentation, constructive fraud and breaches of fiduciary duty . . . constitute unlawful sales of securities pursuant to N.C.G.S. § 78A-8, and are actionable pursuant to N.C.G.S. § 78A-56." (Compl. ¶ 50.) Plaintiffs' NCSA claim, therefore, is also premised on allegations of fraud. Just as with a UDTP claim brought on this basis, where a NCSA claim is based on fraud, the claim must be pled with particularity. *Tillery Envtl. LLC v. A&D Holdings, Inc.*, 2018 NCBC LEXIS 13, at *20 (N.C. Super. Ct. Feb. 9, 2018). The Court has already concluded that Plaintiffs' fraud claim lacks the specificity required by Rule 9(b). Therefore, the Court further concludes that Plaintiffs' NCSA claim is insufficient on that same basis. This claim, accordingly, is DISMISSED.

### F. Count VI: Negligence, Including Negligent Hiring, Supervision and Retention

45. Although under a single heading, Plaintiffs appear to bring two separate negligence claims: (i) a negligent hiring, supervision, and retention claim, (Compl. ¶ 53(a)–(h)); and (ii) a general negligence claim, (Compl. ¶ 53(i)–(q)). Given its specificity, the Court addresses the former of the two claims first.

46. "North Carolina recognizes a cause of action for negligent supervision and retention as an independent tort based on the employer's liability to third parties." *Smith v. Privette*, 128 N.C. App. 490, 494, 495 S.E.2d 395, 398 (1998). A claim for

negligent supervision requires a plaintiff to allege (1) the specific negligent act of an employee on which the action is founded; (2) incompetency of the employee by inherent unfitness or previous specific acts of negligence from which incompetency may be inferred; and (3) an employer's either actual or constructive notice of such unfitness or bad habits, thereby showing that the employer could have known the facts had it used ordinary care in oversight and supervision. *Medlin v. Bass*, 327 N.C. 587, 590–91, 398 S.E.2d 460, 462 (1990).

47. Plaintiffs do not specifically allege that Lipscomb was incompetent as an investment advisor. At most, Plaintiffs allege that "the investments in question were completely unsuitable for investors of the Beams' age, financial situation, sophistication, and investment goals." (Compl. ¶ 24.) From the face of the Complaint, the Court cannot infer that this statement correlates to Lipscomb's "inherent unfitness" as an investment advisor. More importantly, however, even if the Court were to find this statement sufficient at inferring Lipscomb's incompetence, there are no allegations in the Complaint that Defendant knew or had reason to know of Lipscomb's incompetence *prior to* Lipscomb's transferring the Beams' investments into allegedly unsuitable accounts. *See Wilkerson v. Duke Univ.*, 229 N.C. App. 670, 677, 748 S.E.2d 154, 160 (2013) ("To support a claim of negligent retention and supervision against an employer, the plaintiff must prove that the incompetent employee committed a tortious act resulting in injury to plaintiff and that *prior to the act*, the employer knew or had reason to know of the employee's incompetency." (emphasis added).) For this reason, Plaintiffs have failed to sufficiently allege a claim

for negligent hiring, supervision, and retention. This claim, therefore, is DISMISSED.

48. Although not separately labeled, the Court interprets the Complaint as also asserting a general negligence claim. "[T]he essential elements of any negligence claim are the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." *Harris v. DaimlerChrysler Corp.*, 180 N.C. App. 551, 555, 638 S.E.2d 260, 265 (2006).

49. Plaintiffs have minimally alleged each of these elements to survive dismissal of their negligence claim on a Rule 12(b)(6) Motion. Unlike many of Plaintiffs' other claims, their negligence claim does not need to be pled with particularity pursuant to Rule 9(b). Rather, Plaintiffs must only abide by the requirements of Rule 8(a). A claim is sufficiently pled pursuant to Rule 8(a) if it "gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial." N.C.G.S. § 1A-1, Rule 8(a).

50. Plaintiffs have done that here. Plaintiffs have minimally alleged the existence of a fiduciary relationship, and therefore a fiduciary duty. It follows that Plaintiffs have also alleged the more general, lower duty of care required to assert a general negligence claim. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 59, 554 S.E.2d 840, 846 (2001) ("A duty [for purposes of alleging negligence] is defined as an obligation . . . requiring the person to conform to a certain standard of conduct . . . . A person's obligation or duty to act may flow from explicit requirements, *i.e.,*

statutory or contractual, or may be implied from attendant circumstances." (internal quotation marks and citations omitted).)

51. Plaintiffs have also identified several bases upon which they allege Defendant breached that duty of care. (*See* Compl. ¶ 53.) Namely, Plaintiffs allege that Defendant was negligent in allowing Lipscomb to continue working on the Beams' accounts after his termination, failing to notify the Beams of Lipscomb's termination, failing to review the Beams' investment portfolio, and failing to engage in meaningful management of the Beams' investments. (Compl. ¶¶ 53(i), (j), (p), (q).) Plaintiffs have also alleged that Defendant's multiple breaches led to the substantial depletion of the Beams' life savings. (*See* Compl. ¶¶ 22, 55.) Accordingly, Plaintiffs' general negligence claim—which is not otherwise challenged by the Motion—survives dismissal at this stage.[3]

### G.    Count VII: Breach of Contract

52. Plaintiffs also assert a breach of contract claim against Defendant, alleging that Defendant "agreed to hold, invest and safeguard the Beams' funds, and to do so with due caution, in its best interest, and to protect and secure their funds." (Compl. ¶ 57.)

53. Like Plaintiffs' negligence claim, Plaintiffs' breach of contract claim is subject only to the lower pleadings specificity requirements of Rule 8(a). *Tillery Envtl. LLC*, 2018 NCBC LEXIS 13, at *77. Therefore, the Complaint need only allege

---

[3] The Court acknowledges that Plaintiffs' negligence claim, to the extent premised on the same bases as its breach of contract claim, may be pled in the alternative. *See* fn. 4, *infra*. At this stage in litigation, Plaintiffs are permitted by Rule 8 to bring claims in the alternative.

(1) the existence of a valid contract and (2) breach of the terms of that contract. *Daniel Grp., Inc. v. Am. Sales & Mktg.*, 2016 NCBC LEXIS 112, at *9 (N.C. Super. Ct. Dec. 15, 2016) (citing *Johnson v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365, 369, 618 S.E.2d 867, 870 (2005)). "[W]here the complaint alleges each of these elements, it is error to dismiss a breach of contract claim under Rule 12(b)(6)." *Id.* (quoting *Woolard v. Davenport*, 166 N.C. App. 129, 134, 601 S.E.2d 319, 322 (2004)).

54. Defendant seeks to dismiss Plaintiffs' breach of contract claim on the grounds that: (1) Plaintiffs do not identify a specific contract between the Beams and Defendant; (2) Plaintiffs do not allege offer, acceptance, consideration, and mutuality of assent to the contract's essential terms; and (3) Plaintiffs have not identified any terms Defendant allegedly breached. (Supp. Mem. 17–18.)

55. First, Rule 8(a)'s notice-pleading standard does not require a plaintiff to attach a written contract to, or specifically identify its terms in, a complaint. *Wray v. City of Greensboro*, 370 N.C. 41, 54, 802 S.E.2d 894, 903 (2017) ("[T]here is no rule which requires a plaintiff to set forth in his complaint the full contents of the contract which is the subject matter of his action or to incorporate the same in the complaint by reference to a copy thereof attached as an exhibit as long as the complaint . . . allege[s] such a state of facts as would put defendants . . . on legal notice of the existence of the contract." (citation and quotation marks omitted)). Here, Plaintiffs have alleged that there was a contract between the Beams and Defendant. (Compl. ¶ 57.) For Rule 12(b)(6) purposes, this is minimally sufficient.

56.     Second, the Court does not believe that a plaintiff must allege full details of contract formation to survive dismissal pursuant to Rule 12(b)(6). *See Daniel Grp., Inc.*, 2016 NCBC LEXIS 112, at *9. Rather, only where the complaint *calls into question* whether there was mutual assent to the contract or proper consideration should the Court consider those elements of contract formation at such an early stage in litigation. On the face of the Complaint, Plaintiffs have alleged that the parties had a contract. Defendant's refuting the existence of that contract is not something the Court can consider on a Rule 12(b)(6) motion when it must treat the allegations in the Complaint as true. Accordingly, Plaintiffs' failure to specifically plead mutual assent between the parties or consideration thereto is not fatal to their breach of contract claim.

57.     Third, Plaintiffs have sufficiently alleged that Defendant breached the parties' contract. While Plaintiffs do not identify specific breaches within the claim itself, Plaintiffs do incorporate by reference the actions complained of in the rest of the Complaint, (Compl. ¶ 59), which includes the seventeen actions and inactions specifically listed under Plaintiffs' negligence claim,[4] as well as other, similar

---

[4] While the Court acknowledges the economic loss doctrine prevents a plaintiff from recovering in tort for a claim that is rooted in contract law, Defendant does not raise or argue this doctrine in its Motion, and more importantly, North Carolina allows a plaintiff to plead claims in the alternative. N.C.G.S. § 1A-1, Rule 8(e)(2) ("A party may set forth two or more statements of a claim or defense alternatively . . . . A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both."). Plaintiffs have the option of advancing one claim or the other at a later date, and the Court should not, and therefore does not, dismiss either of Plaintiffs' potentially inconsistent claims at this stage in litigation. *See Hendrix v. Hendrix*, 67 N.C. App. 354, 357, 313 S.E.2d 25, 27 (1984) (Phillips, J., concurring) ("The main reason for permitting inconsistent claims to be alleged is so that litigants can investigate and assess them before having to decide—or before the court decides for them—which inconsistent claim is supportable and which is not."); *Club Car, Inc. v. Dow Chem. Co.*, 2007 NCBC LEXIS 10,

allegations contained in the factual allegations section of the Complaint. Therein, Plaintiffs allege that Defendant withheld from the Beams the status of their investments and failed to tell the Beams that they should divest from these investments even though the investments were facing financial difficulty. (*See* Compl. ¶¶ 23, 26(d), 27.) These allegations certainly support Plaintiffs' allegation that Defendant breached a contract requiring it "to hold, invest and safeguard [the Beams'] funds, and to do so with due caution, in its best interest, and to protect and secure [the Beams'] funds." (Compl. ¶ 57.) Accordingly, Plaintiffs' breach of contract claim is adequately alleged, and the Motion is DENIED to the extent it seeks dismissal of this claim.

## H.    Count VIII: Punitive Damages

58.    The Complaint also includes a separate, independent claim for punitive damages. (Compl. ¶¶ 61–62.) North Carolina courts have repeatedly held that "a claim for punitive damages is not a stand-alone claim." *Funderburk v. JPMorgan Chase Bank, N.A.*, 241 N.C. App. 415, 425 (2015); *see also Thompson v. Bank of Am., N.A.*, 2015 N.C. App. LEXIS 660, at *12 (N.C. Ct. App. Aug. 4, 2015); *Collier v. Bryant*, 216 N.C. App. 419, 434, 719 S.E.2d 70, 82 (2011); *Iadanza v. Harper*, 169 N.C. App. 776, 783, 611 S.E.2d 217, 223 (2006). Therefore, the Court DISMISSES Plaintiffs' claim for punitive damages for the reason that it cannot be asserted as a standalone claim.

---

at *11−12 (N.C. Super. Ct. May 3, 2007) (deferring dismissal of the tort claims on a Rule 12(b)(6) motion because it remained "an open question" whether the plaintiff's negligence actions were covered by the scope of the agreement where the defendant had yet to answer the allegations in the complaint).

59. The Motion also argues that Plaintiffs should not be able to seek punitive damages as a remedy for the claims asserted in the Complaint. Defendant argues that, because Plaintiffs' claims for fraud, constructive fraud,[5] and violation of the NCSA fail, then Plaintiffs' request for punitive damages must also fail. (Supp. Mem. 18–19.) The Court finds Defendant's argument unpersuasive. Under North Carolina law, punitive damages are available in certain circumstances involving fraud, malice, or willful or wanton conduct. *Alamance Family Practice, P.A. v. Lindley*, 2018 NCBC LEXIS 83, at *33 (N.C. Super. Ct. Aug. 14, 2018). Plaintiffs' breach of fiduciary duty claim survives dismissal, and our courts have allowed punitive damages stemming from proof of a breach of fiduciary duty. *See, e.g., Lacey v. Kirk*, 238 N.C. App. 376, 394, 767 S.E.2d 632, 645–46 (2014). Moreover, punitive damages are available on a negligence claim where the jury finds that a defendant's negligence was willful and wanton. *See Robinson v. Seaboard S.R., Inc.*, 87 N.C. App. 512, 518–19, 361 S.E.2d 909, 914–915 (1987). In this context, our appellate courts have explained,

> To constitute willful injury there must be actual knowledge, or that which the law deems to be the equivalent of actual knowledge, of the peril to be apprehended, coupled with a design, purpose, and intent to do wrong and inflict injury. A wanton act is one which is performed intentionally with a reckless indifference to injurious consequences probable to result therefrom.

*Id.* at 520, 361 S.E.2d at 914 (quoting *Wagoner v. N.C. R.R. Co.*, 238 N.C. 162, 168, 77 S.E.2d 701, 706 (1953)).

---

[5] Although a constructive fraud claim does not need to be pled with particularity pursuant to Rule 9(b) like other fraud claims, there is case law indicating that a Plaintiff can seek punitive damages associated with his constructive fraud claim like with other fraud claims. *See Melvin v. Home Fed. S&L Ass'n*, 125 N.C. App. 660, 665, 482 S.E.2d 6, 8–9 (1997).

60. Here, Plaintiffs have alleged minimally sufficient facts to support Plaintiffs' allegations that Defendant acted knowingly and purposefully, or with a reckless indifference to the resulting consequences to the Beams' investments. Whether punitive damages may ultimately be awarded is a question for another day based on a more fully developed record. *See id.* Accordingly, while Plaintiffs' claim for punitive damages is dismissed as an independent cause of action, Plaintiffs are not barred by this ruling from seeking punitive damages on any of their surviving claims that warrant the award of such damages.

## I.     Statutes of Limitations (Remaining Claims)

61. Defendant additionally contends that Plaintiffs' claims are time-barred and therefore subject to dismissal pursuant to Rule 12(b)(6). Because the Court has dismissed Plaintiffs' fraud; UDTP; NCSA; and negligent hiring, supervision, and retention claims, the Court need not address whether these claims are also subject to dismissal under the applicable statutes of limitations. Accordingly, the Court turns its attention to the appropriate statutes of limitations for Plaintiffs' breach of fiduciary duty, general negligence, and breach of contract claims.

62. "A statute of limitations defense may properly be asserted in a Rule 12(b)(6) motion to dismiss *if it appears on the face of the complaint that such a statute bars the claim.*" *Horton v. Carolina Medicorp*, 344 N.C. 133, 136, 472 S.E.2d 778, 780 (1996) (emphasis added). Once a statute of limitations issue is properly raised by a defendant, "the burden of showing that the action was instituted within the prescribed period is on the plaintiff." *Id.* (citation omitted). "A plaintiff sustains this

burden by showing that the relevant statute of limitations has not expired." *Id.* (citation omitted).

63. For purposes of determining whether the claims in question are time-barred, the Court views the allegations in the Complaint in the light most favorable to Plaintiffs. *Sparrow Sys. v. Private Diagnostic Clinic, PLLC*, 2014 NCBC LEXIS 70, at \*30 (N.C. Super. Ct. Dec. 24, 2014) (citing *Brooks v. Ervin Constr. Co.*, 253 N.C. 214, 219, 116 S.E.2d 454, 459 (1960)). The Court addresses each of Plaintiffs' remaining claims in turn.

### 1. *Breach of Fiduciary Duty*

64. Defendant first argues that Plaintiffs' breach of fiduciary duty claim is time-barred because any fiduciary duty imposed on Defendant by virtue of its employer-employee relationship with Lipscomb ended after Lipscomb left Defendant in 2010. (Supp. Mem. 8.) Defendant contends that the discovery rule applicable to breach of fiduciary duty claims cannot save Plaintiffs' otherwise time-barred claim because (1) Plaintiffs have not put forth sufficient facts to establish that the Beams discovered Defendant's alleged breach in 2016; and (2) Plaintiffs have not alleged that the Beams performed any due diligence or that due diligence would have been futile at discovering Defendant's alleged breach. (Reply Supp. Mot. Dismiss 2–4, ECF No. 16 ["Reply"].)

65. "Allegations of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by a three-year statute of limitations applicable to contract actions." *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, 614

S.E.2d 328, 335 (2005). However, unlike contract claims, "[b]reach of fiduciary duty claims accrue upon the date when the breach is discovered[,]" not when the breach occurs. *Trillium Ridge Condo. Ass'n v. Trillium Links & Vill., LLC*, 236 N.C. App. 478, 501, 764 S.E.2d 203, 219 (2014). Accordingly, Plaintiffs' breach of fiduciary duty claim is subject to a discovery rule, meaning that accrual of the limitations period begins "at the time of discovery regardless of the length of time between the fraudulent act or mistake and plaintiff's discovery of it." *Forbis*, 361 N.C. at 524, 649 S.E.2d at 386.

66. The Court is unpersuaded by Defendant's first argument regarding the sufficiency of Plaintiffs' allegations to support application of the discovery rule to this case. Although the Beams allege that Lipscomb's employment with Defendant ended in 2010, (Compl. ¶ 11), Plaintiffs also allege that Defendant never communicated Lipscomb's termination to the Beams, (Compl. ¶ 13), and that, moreover, Defendant allowed Lipscomb to continue working on the Beams' accounts even after his termination, (Compl. ¶ 16). Upon this factual background, Plaintiffs allege that the Beams did not discover Defendant's actionable conduct until 2016. (Compl. ¶ 22.)

67. As an initial note, the Court believes, at this time, that Defendant's failure to notify the Beams of Lipscomb's termination, coupled with Defendant permitting Lipscomb to continue working on the Beams' investment accounts, supports extending Defendant's fiduciary relationship beyond 2010 and up and until Plaintiffs' discovery of Defendant's breach. *See, e.g., Fike v. Bd. of Trustees*, 53 N.C. App. 78, 80, 279 S.E.2d 910, 912 (1981) ("Where a person by words or conduct represents or

permits it to be represented that another person is his agent, he will be estopped to deny the agency as against third persons who have dealt, on the faith of such representation, with the person so held out as agent, even if no agency existed in fact.").

68. Moreover, the Court believes, based on Plaintiffs' allegations and the existence of an applicable discovery rule, that it cannot conclude, at this time, that Plaintiffs' claim is time-barred. On a Rule 12(b)(6) motion, the Court evaluates the facts in the light most favorable to Plaintiffs, even when the limitations period is called into question by Defendant. *See Sparrows Sys.*, 2014 NBC LEXIS 70, at *30. Whether Plaintiffs need to prove that the Beams could not have discovered Defendant's actionable conduct earlier is a question for a different day, and presumably one for the factfinder or for the Court on a more developed record. *See Trillium Ridge Condo. Ass'n* , 236 N.C. App. at 501, 764 S.E.2d at 219 (holding that the trial court erred in granting summary judgment in the defendants' favor on the basis of the statute of limitations when there were factual disputes over when the plaintiff could have discovered the defendants' breach of fiduciary duty); *see also Hunter*, 162 N.C. App. at 486, 593 S.E.2d at 601 ("[D]etermining when [the] plaintiff should, in the exercise of reasonable care and due diligence, have discovered the [alleged] fraud is a question of fact to be resolved by the jury.").

69. The Court is also unpersuaded at this time that Plaintiffs had to plead due diligence (and futility thereof) in order to take advantage of the discovery rule. Plaintiffs have alleged that Defendant was the Beams' fiduciary. (Compl. ¶¶ 29, 30.)

Of particular importance, Plaintiffs allege that Lipscomb, Defendant's agent, became intricately involved in the Beams' everyday lives, becoming "their most trusted advisor." (Compl. ¶ 8.) Our Courts have recognized that,

> the failure of [a] defrauded person to use diligence in discovering . . . fraud may be excused where there exists a relation of trust and confidence between the parties. This is so for the reason that a confidential or fiduciary relation imposes upon the one who is trusted the duty to exercise the utmost of good faith and to disclose all material facts affecting the relation.

*Vail v. Vail*, 233 N.C. 109, 116, 63 S.E.2d 202, 207 (1951) (internal citation omitted).

70. For the reasons set forth above, Plaintiffs have alleged a fiduciary relationship between the Beams and Defendant, and accordingly, Defendant's duty as the Beams' fiduciary excuses (for purposes of the Court's 12(b)(6) analysis) any claimed lack of diligence on their part in discovering Defendant's breach of fiduciary duty prior to 2016. Therefore, at this time, the Court declines to find Plaintiffs' breach of fiduciary duty claim time-barred. The Motion, therefore, is DENIED in that regard.

### 2. Negligence

71. Defendant, focusing primarily on Plaintiffs' negligent hiring, supervision, and retention claim, argues that Plaintiffs' negligence claim is time-barred because Lipscomb's employment with Defendant ended in 2010, and accordingly any claim related to Lipscomb's hiring, supervision, and retention would also be time-barred. (Supp. Mem. 16.)

72. The applicable statute of limitations period for general negligence claims is three years. *Harrold*, 149 N.C. App. at 781, 561 S.E.2d at 917 (citing N.C.G.S. §§ 1-

52(1), (5)). A plaintiff's negligence claim "accrues when the wrong giving rise to the right to bring suit is committed, even though the damages at that time be nominal and the injuries cannot be discovered until a later date." *Id.* at 781, 561 S.E.2d at 918; *see also White*, 166 N.C. App. at 308–309, 603 S.E.2d at 164–165 (recognizing that the statutory provision governing negligence claims, unlike the provision governing fraud claims, does not include a discovery rule).

73. Plaintiffs' allegations in support of their negligence claim do not specify dates or times when Defendant acted negligently with respect to Plaintiffs' investment accounts. While Plaintiffs do affirmatively allege that Lipscomb ended his employment with Defendant in 2010 (which, absent any equitable doctrine tolling the limitations period, would bar Plaintiffs' negligent hiring, supervision and retention claim[6]), Plaintiffs' negligence claim is broader than (and distinct from) a claim related to Lipscomb's hiring, supervision, and retention. Rather, a fair and accurate reading of the Complaint indicates that Defendant's negligence could have occurred at any point through 2016. Accordingly, the Complaint does not reveal on its face that Plaintiffs' negligence claim is barred by the applicable limitations period and the Motion is therefore DENIED to the extent it seeks dismissal of Plaintiffs' claim on that basis.

*3. Breach of Contract*

74. As discussed above, Plaintiffs do not specifically allege which conduct complained of supports their breach of contract claim, but they do incorporate by

---

[6] As previously noted, the Court need not reach this issue here because Plaintiffs have failed to sufficiently plead the elements of this claim.

reference the rest of the factual allegations set forth throughout the Complaint. Defendant contends that Plaintiffs have not alleged any contractual breach that occurred prior to July 23, 2014 (when the Beams allegedly closed their accounts with Defendant),[7] and further argues that Plaintiffs cannot maintain a breach of contract claim for misconduct allegedly occurring thereafter because the Beams no longer had a contractual relationship with Defendant. (Supp. Mem. 18.)

75.    Generally, a plaintiff must bring an action for breach of contract within three years from the time of the accrual of the cause of action. N.C.G.S. § 1-52(1)). The three-year statute of limitations "begins to run on the date the promise is broken," *Penley v. Penley*, 314 N.C. 1, 20, 332 S.E.2d 51, 62 (1985), regardless of when the harmful consequences of the breach of contract were discovered or would have been discovered, *Brantley v. Dunstan*, 10 N.C. App. 706, 708–09, 179 S.E.2d 878, 880 (1971) (quoting *Jewell v. Price,* 264 N.C. 459, 142 S.E.2d 1 (1965)).

76.    Plaintiffs acknowledge the three-year statute of limitations but contend that Defendant had a contractual duty to the Beams at least through November 2014[8] and therefore the "last act" giving rise to Plaintiffs' claim extended to within the three-year limitations period. (Opp'n Mem. 8.) The Court understands Plaintiffs' argument to be that Defendant breached its contract with the Beams in multiple ways and at different times, each breach in and of itself sufficient to support a breach

_____

[7] The date on which the Beams closed their account with Defendant is not alleged in the Complaint. Accordingly, the Court does not consider this date when determining, on a Rule 12(b)(6) motion, whether or not Plaintiffs' claim is time-barred on the face of the Complaint.
[8] The Court does not rely on this date as an outer limit for the same reason as stated in footnote 7.

of contract claim. Defendant does not contest this interpretation in its reply brief and the Court has not located any controlling law providing that a breach of contract action accrues on the date of the first breach of a contract so as to bar all subsequent breaches if the action is not brought within three years of the first breach. *Cf. Brantley*, 10 N.C. App. at 708, 179 S.E.2d at 880 (recognizing that the complaint had not alleged any subsequent breach of the contract that would "begin anew the running of the statute of limitations" and therefore the statute of limitations began to run at the first (and only) alleged breach of the contract).

77.     The Court does not believe the Complaint reveals on its face that Plaintiffs' claim is barred by the applicable limitations period. Plaintiffs do not specify the dates upon which Defendant's alleged misconduct occurred. Instead, in Paragraphs 26 and 27 of the Complaint, Plaintiffs generally state that "[t]hroughout this period of several years" Defendant made false and/or misleading statements and concealed information about the Beams' investment accounts and the manager of their accounts. The Complaint is also devoid of any specific allegations regarding the dates of Plaintiffs' investments,[9] the dates upon which the Beams received any account statements from Defendant, or other facts that would indicate Plaintiffs' allegations clearly fall outside the limitations period. While Plaintiffs' lack of specificity is fatal to Plaintiffs' claims subject to Rule 9(b), it does not, in this case and at this time, also support a Rule 12(b)(6) dismissal of Plaintiffs' surviving claims based on the statute

---

[9] The Complaint alleges that the Beams began transferring their investments in 2008, (*see* Compl. ¶ 7), but does not reveal when all Plaintiffs' investments were transferred, or if there were any subsequent transfers or the dates on which allegedly unsuitable investments were purchased.

of limitations.[10] While Defendant's earliest breaches of the parties' alleged contract very well may be time-barred, reading the Complaint in the light most favorable to Plaintiff, conduct giving rise to Plaintiffs' breach of contract claim could have occurred within the requisite limitations period. Accordingly, the Court declines to find Plaintiffs' breach of contract claim time-barred in toto at this time and the Motion is DENIED in that respect.

### 4. Denial of the Motion Regarding Statutes of Limitation is Without Prejudice

78. The Court wishes to make clear that its foregoing analysis and conclusion that Plaintiffs' claims are not time-barred is without prejudice to Defendant's raising the applicable statutes of limitations as an affirmative defense and asserting this defense at a procedurally appropriate stage upon a more fully developed record.

## V. CONCLUSION

79. **THEREFORE**, the Court **GRANTS in part** the Motion. Plaintiffs' claims for fraud/misrepresentation (including negligent misrepresentation), constructive fraud, UDTP, violation of the NCSA, negligent hiring, supervision, and retention (but not Plaintiffs' general negligence claim), and punitive damages are **DISMISSED**. Except as otherwise expressly stated herein, the Motion is **DENIED**.

---

[10] Although Defendant argues that Plaintiffs bear the burden of showing to the Court that the statute of limitations has not run, the Court believes Defendant's emphasis is misplaced. The controlling law in this state is that when the Complaint reveals *on its face* that the claim is barred by the relevant statute of limitations, then the burden shifts to the plaintiff to prove otherwise. *See* Horton, 344 N.C. at 136, 472 S.E.2d at 780. Accordingly, before the burden shifts to the Plaintiffs here, the Complaint must clearly assert that actionable conduct occurred outside the applicable statute of limitations period. Here, the Complaint has not clearly shown that the contract was only breached outside of the limitations period.

**SO ORDERED**, this the 3rd day of September, 2019.

/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases