IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-41

Filed 20 August 2025

Moore County, No. 24 CVS 000273

KRISTIN BLACK WYMAN, Individually, JOE WYMAN, DANIEL ROBERT BLACK, Individually, SHERILL BLACK, KRISTIN BLACK WYMAN, Co-executor of the ESTATE of MARY CAMERON BLACK, DANIEL ROBERT BLACK, Co-executor of the ESTATE of MARY CAMERON BLACK, Plaintiffs,

v.

DEREK S. BARBER, Defendant.

Appeal by Defendant from judgment entered 1 October 2024 by Judge Regina M. Joe in Moore County Superior Court. Heard in the Court of Appeals 21 May 2025.

*Clarke Phifer PLLC, by Stanley W. West, for Plaintiffs-Appellees.*

*Chris Kremer for Defendant-Appellant.*

GRIFFIN, Judge.

Defendant Derek S. Barber appeals from the trial court's order granting Plaintiffs the Estate of Mary C. Black's Motion for Summary Judgment. Defendant contends the trial court erred by: (1) granting Plaintiffs' Motion because genuine issues of material fact exist; (2) failing to join a necessary party; and (3) denying Defendant's Motion to Continue. We affirm the trial court's order.

## I.    Factual and Procedural Background

In 2003, Mary C. Black acquired by deed two parcels of land located on the

north and south side of Roseland Road in Aberdeen, North Carolina.[1]  Black owned

eight acres on the north side and seven acres on the south side.  The eight-acre parcel

included a house.  Both the eight-acre and seven-acre parcels are associated with the

same parcel identification number, 00046723.  In 2009, Black purchased three

additional acres on the south side, immediately adjacent to the seven-acre parcel.[2]

The parcel identification number for the three-acre parcel is 20090102.  After Black

passed away, Plaintiffs acquired ownership of the eight, seven, and three-acre

parcels.

In 2022, Plaintiffs decided to sell the seven-acre and three-acre parcels located

on the south side as one tract of land encompassing ten acres total.  Plaintiffs decided

to sell the eight-acre parcel on the north side, including the house, separately.  On 6

June 2022, Leasa Haselden, a licensed real estate agent in North Carolina, listed the

ten-acre tract for sale.  On 10 July 2022, Haselden listed the house and eight-acre

parcel for sale.

On 9 June 2022, the ten-acre tract went under contract for purchase.  While

the ten-acre tract was under contract, Defendant's fiancé, Jeanna Mathias, contacted

---

[1] Moore County GIS, https://gis.moorecountync.gov/maps/interactive.htm (last visited Aug. 12, 2025); Moore County Property Records Search, https://icare.moorecountync.gov/careprd/Datalets/Datalet.aspx?mode=&UseSearch=no&pin=00046723&jur=063&taxyr=2025 (last visited Aug.12, 2025); Moore County Register of Deeds, https://rod.moorecountync.gov/RealEstate/SearchDetail.aspx (last visited Aug. 12, 2025).

[2] Moore County Property Records Search, https://icare.moorecountync.gov/careprd/Datalets/Datalet.aspx?mode=&UseSearch=no&pin=20090102&jur=063&taxyr=2025 (last visited Aug. 12, 2025); Moore County Register of Deeds, https://rod.moorecountync.gov/RealEstate/SearchDetail.aspx (last visited Aug. 12, 2025).

Haselden regarding the house and eight-acre parcel listed for sale. After expressing interest in the house and eight-acres, Plaintiffs and Defendant authorized Haselden to act as a dual agent for both parties. Defendant made an offer to purchase the property for a sum of $305,000.00 and Plaintiffs accepted the offer. On 6 August 2022, Plaintiffs and Defendant executed the offer to purchase and contract agreement.

In the contract, signed by the parties, the legal description of the property included the parcel identification number, 00046723. This is the parcel identification number which includes both the eight-acre and seven-acre parcels. The contract did not specify that only the eight-acre parcel, including the house, on the north side was being sold, or that the eight-acre and seven-acre parcels would need to have separate parcel identification numbers as a result.

When Defendant applied for the loan to purchase the house and eight acres, the mortgage company, Movement Mortgage, required an appraisal. The mortgage company only assessed the house and eight-acre parcel on the north side. On 4 September 2022, Defendant received a copy of the appraisal which included the house and eight-acre parcel.

On 25 August 2022, Plaintiffs and Defendant closed on the property by deed at the Moore County Register of Deeds. The deed was prepared without a title search and included the same parcel number as the contract. The legal description of the property included a non-certified plat map of the eight-acre parcel on the north side

and the seven-acre parcel on the south side. On 19 October 2022, the deed was recorded. The deed conveyed both the eight-acre and seven-acre parcels to Defendant.

Less than a year after closing, Haselden realized the contract and deed improperly described the property purchased by Defendant and included the parcel identification number that included both the eight-acre and seven-acre parcels. When the error was discovered, Haselden had a conversation with Mathias that a correction deed would need to be signed. Defendant's closing attorney, Raymond Gatti, stated in an e-mail to Plaintiffs' attorney that Defendant was "agreeable to correcting the situation" and to "please send [the] proposed correction documents[.]"

In June 2023, Defendant became unresponsive to both Haselden and Gatti in their attempts to have the correction deed signed. As a result, on 22 February 2024, Plaintiffs filed a complaint requesting the court order reformation of the contract and property deed. On 31 May 2024, Defendant filed an answer to Plaintiffs' complaint.

On 28 August 2024, Plaintiffs filed a Motion for Summary Judgment asserting there were no genuine issues of material fact as to Plaintiffs' claim for reformation of contract and deed. Plaintiffs asserted both parties understood the sale was only intended to include the house and eight-acre parcel on the north side of Roseland Road and no property on the south side. Plaintiffs requested the contract and deed be reformed due to mutual mistake of fact. Plaintiffs Motion included affidavits from Haselden, the Parties' real estate agent; Michael Chad Smith, a Senior Loan Officer

with Movement Mortgage; and Stanley W. West, Plaintiffs' trial counsel. On 20 September 2024, at 4:56 PM and 4:57 PM, Defendant filed two affidavits from Mathias in opposition to Plaintiffs' Motion. That same day, Plaintiffs were served with Defendant's affidavits after close of business. This was the last business day before the hearing on Plaintiffs' Motion.

On 23 September 2024, Plaintiffs' Motion came for hearing in Moore County Superior Court. Prior to the hearing, Defendant moved to continue, and the trial court denied Defendant's Motion. On 1 October 2024, the trial court entered an order granting Plaintiffs' Motion. In the summary judgment order, the court stated Defendant's affidavits "were not timely filed or served and were therefore excluded from consideration." Defendant timely appeals from the trial court's order.

## II. Analysis

Defendant contends the trial court erred by: (1) granting Plaintiffs' Motion because genuine issues of material fact exist; (2) failing to join a necessary party; and (3) denying Defendant's Motion to Continue. We affirm the trial court's order.

### A. Summary Judgment

Defendant argues genuine issues of material fact exist regarding Plaintiffs' claim of mutual mistake. We disagree.

We review a trial court's ruling on a summary judgment motion de novo. *General Fidelity Ins. Co. v. WFT, Inc.*, 269 N.C. App. 181, 185, 837 S.E.2d 551, 556 (2020). Summary judgment is appropriate when "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." N.C. R. Civ. P. 56(c) (2023). "A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982). "Generally, this means that on undisputed aspects of the opposing evidential forecast, where there is no genuine issue of fact, the moving party is entitled to judgment as a matter of law." *Id.* (citation modified).

"Both before the trial court and on appeal, the evidence must be viewed in the light most favorable to the non-moving party and all inferences from that evidence must be drawn against the moving party and in favor of the non-moving party." *White v. Consol. Plan., Inc.,* 166 N.C. App. 283, 296, 603 S.E.2d 147, 157 (2004). A trial court's decision should be affirmed on appeal "if there is any ground to support the decision." *Nifong v. C.C. Mangum, Inc.*, 121 N.C. App. 767, 768, 468 S.E.2d 463, 465 (1996).

Here, Plaintiffs asserted a reformation claim on grounds of mutual mistake and later moved for summary judgment regarding the same. "Reformation is a well-established equitable remedy used to reframe written instruments where, through mutual mistake or the unilateral mistake of one party induced by fraud of the other, the written instrument fails to embody the parties' actual, original agreement."

*Metropolitan Prop. & Cas. Ins. Co. v. Dillard,* 126 N.C. App. 795, 798, 487 S.E.2d 157, 159 (1997) (citation and internal marks omitted). "Where a legal instrument does not express the true intentions of the parties due to mutual mistake or the mistake of the draftsman, reformation is available." *Wells Fargo Bank, N.A. v. Coleman*, 239 N.C. App. 239, 248, 768 S.E.2d 604, 611 (2015).

"A mutual mistake is one that is shared by both parties to the contract, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement." *Id.* at 248–49, 768 S.E.2d at 611 (citation and internal marks omitted). "A party seeking reformation on the ground of mutual mistake must prove the parties agreed upon a material stipulation to be included in the written instrument, the stipulation was omitted by the parties' mistake, and because of the mistake, the written instrument does not express the parties' intention." *Id.* at 249, 768 S.E.2d at 611 (citation modified). The moving party "must prove the existence of the mutual mistake by 'clear, cogent and convincing evidence.'" *Id.* (quoting *Hice v. Hi-Mil, Inc.,* 301 N.C. 647, 651, 273 S.E.2d 268, 270 (1981)).

Here, the evidence viewed in the light most favorable to Defendant shows existence of mutual mistake in the contract and deed. The mistake occurred when the legal description of the property in the contract only included the parcel identification number associated with the eight-acre and seven-acre parcels of land without any additional information. The contract failed to specify that only the house

and eight-acre parcel on the north side were being sold. Based on the inaccurate information provided in the contract, the deed was prepared and recorded.

The record evidence viewed in the light most favorable to Defendant shows Plaintiffs did not intend to convey any land on the south side to Defendant, and Defendant understood he was only purchasing the house and eight-acre parcel on the north side. Plaintiffs listed the ten-acre tract and the eight-acre parcel—including the house—separately, and the properties had separate listing sheets. Defendant's fiancé, Mathias, contacted Haselden specifically about the house and eight-acres, and Haselden informed Defendant and Mathias at the showing that the ten-acre tract on the south side was under contract. Defendant offered to purchase the property for $305,000.00, and the house and eight-acre parcel was the only property appraised by the mortgage company. Moreover, the house and eight-acre parcel appraised for $307,000.00, an amount within close range of Defendant's offer.

Additionally, when the mistake of the property conveyance was discovered, Defendant's closing attorney stated in an email Defendant was "agreeable to correcting the situation." Thus, through Defendant's own admission, by and through his legal counsel, Defendant was aware of and acknowledged the mistake. *See Dunkley v. Shoemate*, 350 N.C. 573, 577, 515 S.E.2d 442, 444 (1999) ("North Carolina law has long recognized that an attorney-client relationship is based upon principles of agency, and two factors are essential in establishing an agency relationship: (1) The agent must be authorized to act for the principal; and (2) The principal must

exercise control over the agent." (citation and internal marks omitted)). Here, the evidence supports Defendant and his closing attorney were in an attorney-client relationship and Defendant's closing attorney was acting as Defendant's agent when he sent the email.

Despite Defendant's contention that "there is nothing in the record from [Defendant] supporting an inference that there was a post-closing attorney-client relationship[,]" "the relation of attorney and client may be implied from the conduct of the parties, and is not dependent on the payment of a fee, nor upon the execution of a formal contract." *North Carolina State Bar v. Sheffield*, 73 N.C. App. 349, 358, 326 S.E.2d 320, 325 (1985).

Although we recognize an attorney-client relationship generally terminates once a case has been resolved,[3] and for a closing-attorney that would typically mean at closing, the record reflects Defendant and his attorney were still in communication about an error that occurred at closing. Additionally, by the plain language of the email, Defendant authorized his closing attorney to convey the message that he was "agreeable to correcting the situation." Moreover, if Defendant wanted to dispute the validity of his attorney's statement, Defendant could have produced evidence to the contrary. Instead, Defendant only challenged the duration of the attorney-client

---

[3] "Ordinarily, a representation in a matter is completed when the agreed-upon assistance has been concluded." N.C. RULES OF PROF'L CONDUCT r.1.16 cmt. 1 (N.C. State Bar 2025); "If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved." N.C. RULES OF PROF'L CONDUCT r.1.3 cmt. 4 (N.C. State Bar 2025).

relationship. We hold their attorney-client relationship was still intact at the time the email was sent.

Defendant also contends that if there was any mistake at all, Plaintiffs made the mistake. Specifically, Defendant argues Plaintiffs were the ones who included a single-parcel identification number which encompassed both the eight-acre and seven-acre parcels of land in the contract and deed. The deed also included a plat map of the eight acres on the north side and seven acres on the south side.

Despite Defendant's contention, this Court has held "[n]egligence on the part of one party which induces the mistake does not preclude a finding of mutual mistake." *Dillard*, 126 N.C. App. at 798–99, 487 S.E.2d at 159 (holding mutual mistake where the defendant mistakenly listed the incorrect street number on his insurance policy, but the evidence showed "both parties believed they were contracting to insure a house owned by [the] defendant and [the] defendant did not own the 4321 Sudbury Road residence"); *Wells Fargo Bank,* 239 N.C. App. at 240–41, 768 S.E.2d at 606 (ordering reformation due to mutual mistake where the deed of trust prepared by Wachovia Bank (now Wells Fargo Bank, N.A.) listed the correct street address for the defendants' home, "but mistakenly referenced the book and page number and tax parcel ID of the adjacent, undeveloped lots").

In *Wells Fargo*, this Court relied on our holding in *Dillard* and held a party seeking reformation "need not allege or prove that the mutual mistake was a reasonable or neglect-free mistake." *Id*. at 249, 768 S.E.2d at 611. Moreover, "[e]ven

if the mistake resulted from that party's failure to exercise reasonable diligence, reformation is available if there is clear, cogent, and convincing evidence that the mistake was a mutual one and that it prevents the instrument from embodying the parties' actual, original agreement." *Id.* (citing *Dillard*, 126 N.C. App. at 798–99, 487 S.E.2d at 159). There, we held the evidence was sufficient to support a finding of mutual mistake because "Wells Fargo presented uncontested evidence that the deed of trust include[d] the correct property address of the developed property"; "[t]he appraisal conducted during the loan origination process was performed on the developed property"; the defendants "applied the vast majority of the loan to pay off their existing mortgage on that developed property"; and the defendants "did not forecast any evidence at trial tending to show that the deed of trust was intended to reference the undeveloped, empty lots." *Id.* at 249–50, 768 S.E.2d at 611–12.

Here, like in *Dillard* and *Wells Fargo*, for the reasons stated above, Plaintiffs presented sufficient evidence to support mutual mistake despite any drafting error on behalf of Plaintiffs. Moreover, Defendant did not present any evidence tending to show he understood he was acquiring both the eight acres on the north side, and the seven acres on the south side.

Thus, considering all the evidence presented in the light most favorable to Defendant, we hold Plaintiffs presented "clear, cogent and convincing evidence" to support the existence of mutual mistake. *See Hice,* 301 N.C. at 651, 273 S.E.2d at 270.

## B. Joinder

Next, Defendant contends the trial court reversibly erred by granting Plaintiffs' Motion because a necessary party was not joined. Specifically, Defendant argues Defendant's lender, Movement Mortgage, LLC., has a vested interest in securing its substantial purchase money mortgage and the legal description in its deed of trust is the same as that in Defendant's deed.

Despite Defendant's argument, Defendant did not raise the issue of necessary joinder at trial.

This Court has long recognized "where a theory argued on appeal is not raised before the trial court, the argument is deemed waived on appeal." *Welch v. Welch*, 288 N.C. App. 627, 629–30, 886 S.E.2d 921, 922–23 (2023) (citation and internal marks omitted). *See Bennett v. Hospice & Palliative Care Ctr. of Alamance Caswell*, 246 N.C. App. 191, 195 n.1, 783 S.E.2d 260, 263 n.1 (2016) ("[I]ssues or theories of a case not raised at the trial level will not be entertained for the first time on appeal.").

Rule 12(h)(2) of the North Carolina Rules of Civil Procedure provides that "a defense of failure to join a necessary party . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." *M.E. v. T.J.*, 380 N.C. 539, 563, 869 S.E.2d 624, 639 (2022); N.C. R. Civ. P. 12(h)(2) (2023). While the defense of lack of subject-matter jurisdiction may be raised at any time and for the first time on appeal, "'failure to join a necessary party does not result in a lack of jurisdiction over the subject matter of the

proceeding.'" *Id.* (quoting *Stancil v. Bruce Stancil Refrigeration, Inc.*, 81 N.C. App. 567, 574, 344 S.E.2d 789, 793 (1986) (citation omitted)). Accordingly, "'the defense of failure to join a necessary party must be raised before the trial court and may not be raised for the first time on appeal.'" *Id.* (quoting *Phillips v. Orange Cnty. Health Dept.,* 237 N.C. App. 249, 255, 765 S.E.2d 811, 816 (2014)).

Thus, because Defendant failed to raise the issue of necessary joinder at trial, it is waived and cannot be raised and addressed for the first time on appeal.

**C. Motion to Continue**

Defendant contends the trial court abused its discretion by denying Defendant's Motion to Continue and excluding Defendant's affidavits submitted 20 September 2024.

Our review of the denial of a motion to continue "is generally whether the trial court abused its discretion." *Morin v. Sharp*, 144 N.C. App. 369, 373, 549 S.E.2d 871, 873 (2001) (citation omitted). "A trial court abuses its discretion when its ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re Custodial Law Enf't Recording Sought by Greensboro*, 383 N.C. 261, 268, 881 S.E.2d 96, 101 (2022) (citation and internal marks omitted). Moreover, "a denial of a motion to continue is only grounds for a new trial when [the] defendant shows both that the denial was erroneous, and that he suffered prejudice as a result of the error." *In re L.A.J.,* 381 N.C. 147, 149, 871 S.E.2d 697, 699 (2022).

Here, Defendant filed and served two affidavits in opposition to Plaintiffs' Motion at 4:56 PM and 4:57 PM the Friday before the hearing. Three days later, on the morning of the hearing, Defendant moved to continue, and the trial court denied Defendant's Motion. Defendant argues his Motion should have been granted pursuant to Rule 56(f) of the North Carolina Rules of Civil Procedure. We disagree.

Rule 56(f) provides the following:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

N.C. R. Civ. P. 56(f) (2023).

The rule "permits the opposing party to move for additional time to obtain affidavits or complete discovery essential to justify his opposition." *Am. Travel Corp. v. Cent. Carolina Bank & Tr. Co.,* 57 N.C. App. 437, 441, 291 S.E.2d 892, 895 (1982). "Ordinarily it is error for a court to hear and rule on a motion for summary judgment when discovery procedures, which might lead to the production of evidence relevant to the motion, are still pending and the party seeking discovery has not been dilatory in doing so." *Conover v. Newton,* 297 N.C. 506, 512, 256 S.E.2d 216, 220 (1979).

Here, the record supports a finding that Defendant was not seeking discovery and had not sought discovery of any information in the months prior to the hearing. Plaintiffs filed their complaint on 22 February 2024 and moved for summary

judgment on 28 August 2024. Plaintiffs' Motion came on for hearing 23 September 2024. Thus, Defendant had seven months to seek discovery and produce evidence in opposition to Plaintiffs' complaint and Motion and failed to do so. Instead, Defendant waited until the Friday before the summary judgment hearing on Monday to file affidavits in opposition to Plaintiffs' Motion. Additionally, Defendant untimely served his affidavits.

Rule 6(d) of the North Carolina Rules of Civil Procedure provides the following:

> [O]pposing affidavits shall be served at least two days before the hearing. If the opposing affidavit is not served on the other parties at least two days before the hearing on the motion, the court may continue the matter for a reasonable period to allow the responding party to prepare a response, proceed with the matter without considering the untimely served affidavit, or take such other action as the ends of justice require.

N.C. R. Civ. P. 6(d) (2023).

Under Rule 6, Saturdays and Sundays are excluded in the time computation of service of papers. N.C. R. Civ. P. 6(a) (2023). In other words, opposing affidavits need to be served at least two business days prior to the hearing. *Id.* Defendant served his opposing affidavits on Friday, and the summary judgment hearing was scheduled for Monday. Thus, Defendant failed to timely serve his affidavits.

While it is true Rule 6(d) gives the trial court discretion to allow the late filing of affidavits, this Court has held "absent a showing of excusable neglect, the trial court does not abuse its discretion when it refuses to accept late affidavits."

*Rockingham Square Shopping Ctr., Inc. v. Integon Life Ins. Corp.,* 52 N.C. App. 633, 641, 279 S.E.2d 918, 924 (1981) (holding the trial court did not err by excluding the plaintiffs' untimely affidavits because the plaintiffs "had notice of the summary judgment hearing nearly four months in advance" and "offered no explanation for their delay in presenting opposing affidavits").

Here, Defendant had several months to seek discovery and produce information in opposition to Plaintiffs' complaint and Motion and failed to timely do so. Additionally, Defendant offered no explanation for his delay in filing and presenting the opposing affidavits.

As a result, we hold the trial court did not err by denying Defendant's Motion to Continue and excluding Defendant's affidavits.

## III.   Conclusion

We hold the trial court properly granted Plaintiffs' Motion for Summary Judgment; did not err by failing to join a necessary party; and properly denied Defendant's Motion to Continue.

AFFIRMED.

Judges TYSON and COLLINS concur.